[848 NE2d 1264, 815 NYS2d 887]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GERALD
GARSON, Respondent.

Argued February 7, 2006; decided March 30, 2006

## POINTS OF COUNSEL

*Charles J. Hynes, District Attorney,* Brooklyn (*Leonard Joblove, Seth M. Lieberman* and *Victor Barall* of counsel), for appellant. I. The grand jury evidence establishing that on six occasions, defendant accepted a benefit from another person for having engaged in conduct that violated the Rules of Judicial Conduct was legally sufficient to support the six counts of receiving reward for official misconduct in the second degree. Moreover, there is no constitutional bar to prosecuting defendant for accepting a benefit from another person for having violated the rules. (*People v La Carrubba,* 46 NY2d 658; *People v Gilmour,* 98 NY2d 126; *People v Coe,* 71 NY2d 852; *Matter of VonderHeide [State Commn. on Jud. Conduct],* 72 NY2d 658; *Matter of Mulroy,* 94 NY2d 652; *Matter of Levine,* 74 NY2d 294; *Wein v State of New York,* 39 NY2d 136; *People v Tremaine,* 252 NY 27; *Matter of Theroux v Reilly,* 1 NY3d 232; *People v Brancoccio,* 83 NY2d 638; *Matter of Albano v Kirby,* 36 NY2d 526.) II. The official misconduct count charging defendant with a violation of Penal Law § 195.00 (2) was not multiplicitous. Moreover, the evidence that defendant received a box of cigars as compensation for the advice that he had given to Paul Siminovsky about the Levi case was legally sufficient to support that count. (*People v Henson,* 263 AD2d 550; *People v Saunders,* 290 AD2d 461; *People v Cunningham,* 12 AD3d 1131; *People v Jackson,* 264 AD2d 857; *People v Kindlon,* 217 AD2d 793; *People v Nelson,* 266 AD2d 730; *People v Herlihy,* 66 App Div 534, 170 NY 584; *Matter of Johnson v Morgenthau,* 69 NY2d 148; *People v Hinton,* 40 NY2d 345; *People v Miernik,* 284 AD2d 919.)

*White & White,* New York City (*Diarmuid White* and *Brendan White* of counsel), and *Ronald P. Fischetti* for respondent. I. The

charges of receiving reward for official misconduct in the second degree were properly dismissed on insufficiency and vagueness grounds. (*Arteaga v State of New York,* 72 NY2d 212; *Gravel v United States,* 408 US 606; *Flushing Natl. Bank v Municipal Assistance Corp. for City of N.Y.,* 40 NY2d 731; *People v La Carrubba,* 46 NY2d 658; *Matter of Beach v Shanley,* 62 NY2d 241; *Forti v New York State Ethics Commn.,* 75 NY2d 596; *People v Blanchard,* 288 NY 145; *People v Lynch,* 176 Misc 2d 430; *Matter of Mason [State Commn. on Jud. Conduct],* 100 NY2d 56; *People v Carroll,* 95 NY2d 375.) II. A count charging official misconduct was properly dismissed. (*People v Sanchez,* 84 NY2d 440; *People v Keindl,* 68 NY2d 410; *People v Okafore,* 72 NY2d 81; *People v Gallagher,* 69 NY2d 525; *People v Herlihy,* 66 App Div 534; *People v Senisi,* 196 AD2d 376; *People v Saunders,* 290 AD2d 461; *People v Nelson,* 266 AD2d 730.)

### OPINION OF THE COURT

Ciparick, J.

We are asked to decide whether evidence presented to a grand jury that a judge accepted a benefit for violation of his duty as a public servant, as defined by the Rules of Judicial Conduct (22 NYCRR part 100), is legally sufficient to support six counts of receiving reward for official misconduct in the second degree (Penal Law § 200.25). We hold that the People's reliance on the Rules to support the allegation that defendant violated his official duties was not improper. The Rules set forth a constitutionally mandated duty upon the judiciary and, when combined with the additional factor of receiving a reward, a violation of that duty may serve as a basis for prosecution under Penal Law § 200.25. We conclude that the evidence presented to the grand jury was legally sufficient to support the six counts of receiving reward for official misconduct in the second degree. The additional count charging defendant with official misconduct (Penal Law § 195.00 [2]) was properly dismissed.

### I.

Defendant was a justice of the Supreme Court of the State of New York who at the time of these events was assigned to a matrimonial part in Kings County. After investigation, the People presented evidence to the grand jury that, from October 2001 through March 2003, defendant engaged in a course of conduct where on numerous occasions he violated his duty as a public servant for which he received benefits of cash and other gratuities. The People presented evidence that defendant and

Paul Siminovsky, an attorney who regularly appeared before him, developed a relationship in 2000 wherein Siminovsky would buy defendant meals and give him gifts expecting and receiving preferential treatment in return. This relationship blossomed to the extent that by 2003, according to the testimony before the grand jury, Siminovsky was buying defendant lunch three to four times a week and drinks in the evening between three and five times a week.

In the first count under consideration here, the grand jury heard evidence that defendant conducted improper ex parte conversations about the "Levi case" with Siminovsky, for which defendant received a box of cigars as a reward. Specifically, Siminovsky represented Avraham Levi in a divorce proceeding which was pending before defendant (itself allegedly a circumvention of the random assignment system, facilitated by another Siminovsky client and defendant's court clerk). The grand jury heard that while the Levi case was before defendant, the Kings County District Attorney's office began to monitor defendant's robing room by video and audio surveillance. Among the ex parte conversations captured was one where defendant is heard saying that Siminovsky would prevail in the Levi case even though he did not deserve it. Defendant also instructed Siminovsky to subpoena an expert witness who was unwilling to appear before the court and instructed him what questions to ask of the expert. Defendant told Siminovsky that he would not order the sale of the marital residence and that Mr. Levi would be entitled to its exclusive use.

Grand jury testimony revealed that shortly thereafter, Siminovsky was arrested and entered into a cooperation agreement with the District Attorney's office. On March 4, 2003, while wearing a recording device but unaware of the video surveillance, Siminovsky brought defendant 27 Romeo and Juliet cigars—a box and two singles—at a cost of $272.28. Siminovsky brought them to the robing room and gave defendant an individual cigar, kept one for himself, and then placed the box in the top left drawer of defendant's desk. Siminovsky thanked defendant for helping him formulate a winning strategy in the Levi case. Shortly thereafter, Siminovsky again thanked defendant for the "little pointers" while defendant removed the box of cigars from his desk and inspected it. Before leaving, Siminovsky stated, "[n]ow you're just going to tell me what to write in the memo" in reference to the closing memorandum of law required at the conclusion of the Levi trial. Defendant responded

that Siminovsky would have to charge extra for the memo and then went on to substantively detail what the memo should include.

The other five counts of receiving reward for official misconduct in the second degree allege that defendant accepted monies for referring clients, in his official capacity, to Siminovsky. The first of these referrals allegedly occurred in late 2001. Evidence before the grand jury showed that defendant told Siminovsky that defendant's wife, Robin Garson, referred a client to Siminovsky and that he should compensate her in return.[1] The client is alleged to have known that defendant was a judge and was seen visiting him in his robing room. Subsequently, Siminovsky, while in defendant's robing room, handed defendant $750 in cash as a referral fee for Robin Garson.

Grand jury testimony showed that defendant, for a second time, referred a friend to Siminovsky with the direction that Siminovsky "should take care of Robin." In this instance, the individual knew defendant was a judge. They were seen together at a Brooklyn Bar Association function and were personal acquaintances. After Siminovsky was retained by this client, he wrote a check to Robin Garson for either $1,000 or $1,500.[2]

In a third instance, the People assert that defendant referred an employee of a restaurant he frequented to Siminovsky. The employee knew that defendant was a judge and he believed that the referral helped his case. He commented "[b]ecause I lived in Staten Island, what were the chances of Judge Garson getting the case?" Testimony also indicated that Siminovsky paid defendant $1,000 or $1,500 in cash for the referral by slipping it into his hand during a handshake in defendant's robing room.

In the fourth referral, as alleged by the People, evidence before the grand jury showed that defendant informed Siminovsky that another attorney would be calling him with a referral. As a result of the call, Siminovsky once again obtained a new client. This client knew defendant to be a judge from having met him at a country club. Siminovsky gave defendant $500 in cash by placing it in an envelope and putting it in defendant's desk drawer in his robing room. Siminovsky gave a fee to defendant but not to the attorney who facilitated the referral.

---

**1.** Defendant's wife, Civil Court Judge Robin Garson, was in private practice at the time.

**2.** Siminovsky did not recall whether he gave the check to defendant or to Robin Garson.

In the fifth and sixth referrals as alleged, defendant, according to grand jury testimony, accepted a lump sum payment as a reward for two referrals. Both clients retained Siminovsky as their counsel and likewise are alleged to have known that defendant was a judge from professional and personal relationships with him. Siminovsky paid defendant $1,000 for the referrals. At the time of the payment, March 10, 2003, Siminovsky was cooperating with the District Attorney's office. On that day, while wearing a recording device but unaware of the video surveillance, Siminovsky handed defendant $1,000 in marked bills in defendant's robing room. As he handed the money to defendant, Siminovsky stated the money was for the referrals of "Aiello" and "Caputo" as well as a third person who did not retain him as counsel.

Evidence before the grand jury showed that shortly after defendant placed the money in his pocket, Siminovsky said "[m]ake sure it doesn't fall out of your pocket," to which defendant replied "[i]t's not going to fall out for at least an hour or two. Then it is gone." Siminovsky then left the robing room, at which point defendant took out the money, counted it, placed some of it in his pocket and placed the rest in an envelope in his desk drawer. Several minutes later, defendant called Siminovsky from his cell phone and left him a message asking him to return. Siminovsky returned 38 minutes later at which point defendant handed him the envelope with the money and suggested that Siminovsky make a check out to Robin Garson's campaign committee since she was experiencing a shortfall of $25,000. Siminovsky returned the envelope to defendant and told him "[d]on't worry about it." Defendant took back the envelope and reiterated that Siminovsky should write a check out to the campaign committee. On March 12, 2003, defendant was arrested. The grand jury heard that at the time he had in his possession the 10 marked $100 bills that Siminovsky had given him on March 10, 2003.

Two indictments were filed and later consolidated.[3] As relevant to this appeal, defendant was indicted on six counts of

3. On May 21, 2003, defendant was charged in indictment No. 3515/2003 with six counts of receiving reward for official misconduct in the second degree (class E felonies), one count of official misconduct and one count of receiving unlawful gratuities (class A misdemeanors). On August 5, 2003, defendant was charged in indictment No. 5332/2003 with bribe receiving in the third degree (a class D felony) and three counts of official misconduct (one of which superseded the official misconduct count of the earlier indictment).

receiving reward for official misconduct in the second degree in violation of Penal Law § 200.25.

Penal Law § 200.25 provides that a "public servant is guilty of receiving reward for official misconduct in the second degree when he solicits, accepts or agrees to accept any benefit from another person for having violated his duty as a public servant." The first count of the indictment states:

> "The defendant, on or about March 4, 2003, in the County of Kings, being a public servant, did solicit, accept and agree to accept a benefit, namely a box of cigars, from another person, namely Paul Siminovsky, for having violated his duty as a public servant."

To support the first count, the People submit that defendant violated his duty as a public servant by failing to comply with 22 NYCRR 100.3 (B) (6), which provides in part that "[a] judge shall not initiate, permit, or consider ex parte communications." The People asserted that defendant violated this rule when he engaged in numerous ex parte communications with Siminovsky concerning the Levi case—advising Siminovsky what witnesses to call, what arguments to make and how defendant intended to rule on key issues in the case. This violation of the rule in conjunction with his acceptance of a benefit—the cigars—is sufficient, the People contend, to satisfy the elements of Penal Law § 200.25.

The remaining five counts under Penal Law § 200.25 charge defendant as follows:

> "The defendant, on or about [five different dates], in the County of Kings, being a public servant, did solicit, accept and agree to accept a benefit, namely a sum of United States currency, from another person, namely Paul Siminovsky, for having violated his duty as a public servant."[4]

In support of these charges, the People turn to 22 NYCRR 100.2 (C), which provides in part that "[a] judge shall not lend the prestige of judicial office to advance the private interests of the

---

Supreme Court concluded there was legally sufficient evidence to support the charges of receiving unlawful gratuities (Penal Law § 200.35), bribe receiving in the third degree (Penal Law § 200.10) and one count of official misconduct (Penal Law § 195.00 [1]). A trial on those counts is pending.

4. Counts two through six of indictment No. 3515/2003 allege the dates on which defendant allegedly accepted a fee: October 9, 2001, October 31, 2001, September 5, 2002, November 15, 2002, and March 10, 2003.

judge or others." The People contend that this section prohibits defendant, a judge, from making referrals by lending the prestige of his judicial office to advance his own interests or those of another, here, Siminovsky. The grand jury could have inferred based on the evidence presented that defendant made the referrals to help Siminovsky's practice and, in turn, to gain monetary benefits in the form of "referral fees." Thus, the People maintain that defendant lent the prestige of his judicial office to Siminovsky in order to benefit Siminovsky and himself in violation of rule 100.2. The People argue that this dereliction of duty when coupled with the acceptance of benefits—payments—is sufficient to establish every element of Penal Law § 200.25 in each of the five instances.

Supreme Court granted defendant's motion to dismiss the indictment to the extent of dismissing the six counts of receiving reward for official misconduct on the ground that the "evidence presented to the grand jury that the defendant violated the Rules [of Judicial Conduct] is legally insufficient to establish that he violated a duty he had as a public servant within the meaning of the Penal Law." (4 Misc 3d 258, 266-267 [2004].) The essence of the court's analysis was that the People could not rely on the Rules to establish that defendant's conduct was in dereliction of his duties as a judge. Supreme Court further dismissed two of three counts of official misconduct (Penal Law § 195.00). The court held that sufficient evidence existed to support one count only: that defendant received compensation in exchange for advice under Penal Law § 195.00 (1) in violation of Judiciary Law § 18. The Appellate Division affirmed. A Judge of this Court granted leave, and we now modify and reinstate the six counts charging defendant with receiving reward for official misconduct under Penal Law § 200.25.

## II.

"Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]). In addition, legislative history can be useful to aid in interpreting statutory language (*see Riley v County of Broome*, 95 NY2d 455, 463 [2000]). The receiving reward offense, defined in Penal Law § 200.25, is part of Penal Law article 200, which addresses "Bribery Involving Public Servants and Related Offenses." In enacting Penal Law article 200, the Legislature intended its coverage to be comprehensive to help prevent and prosecute abuses of power in government.

A "public servant" is

> "(a) any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee. The term public servant includes a person who has been elected or designated to become a public servant" (Penal Law § 10.00 [15]).

Thus, "public servant" has been defined "broadly enough to include not only every category of government or public officer, but every employee of such officer or agency" (Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 200 [internal quotation marks omitted]). "Benefit" is also broadly defined to encompass "any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary" (Penal Law § 10.00 [17]). The plain language of Penal Law § 200.25 is consistently broad in that it embraces any variation of reward for benefit, whether one "solicits, accepts or agrees" to such reward.

In enacting Penal Law § 200.25, the Legislature has specifically defined the terms "public servant" and "benefit" and left for factual resolution whether a public servant has "violated his duty." The Legislature's decision not to further define the duty element is understandable given the hundreds of different types of public officials and employees whose misconduct was intended to be covered under the statute. The duty of a Department of Motor Vehicles clerk is not the same as that of a Health Department inspector or, for that matter, a judge. It would therefore have been difficult if not impossible for the Legislature to construct a definition of "duty" that would have encompassed all the derelictions of duty it sought to proscribe. Instead, the Legislature has required that the People prove the duty violated in each case. Such proof can come in the form of live testimony from a lay witness or expert, reliance on an internal or formal body of rules, or other indicia of a defendant's knowledge of wrongdoing.

The Legislature's comprehensive approach finds its roots in the legislative history. Article 200 of the Penal Law sets forth various crimes addressing bribery and bribe receiving, all of which involve a benefit or reward for a future act by a public

servant. Prior to the enactment of Penal Law § 200.25, there was a void in the law that allowed for prosecution of bribery-like offenses where a benefit was given in contemplation of an act in the future (*see* Penal Law §§ 200.00, 200.10), but did not allow for prosecution when an improper act occurred and a benefit was later bestowed upon the public official for that act. Penal Law § 200.25, receiving reward for official misconduct, and its counterpart Penal Law § 200.20, rewarding official misconduct, are intended to fill that void (*see* Commission Staff Notes, reprinted following NY Cons Law Serv, Book 23B, Penal Law § 200.25; *see People v Alvino*, 71 NY2d 233, 244 [1987] [explaining that reward receiving, a lesser offense of bribe receiving, "involves accepting a reward for past official misconduct"]). Judges fall within the broad definition of "public servant." And even prior to the enactment of Penal Law § 200.25, prosecution of "judicial officers" had been authorized under the bribery statutory scheme (*see* former Penal Law § 372).

Defendant urges us to interpret the statute to create a new void—the immunization of judges from criminal prosecution when they receive an illicit benefit after violating a rule of judicial conduct. Specifically, defendant claims that the term "violated his duty" lacks express legislative definition and cannot be proved by evidence that defendant violated his duty under the Rules. This claim lacks merit.

For an indictment to survive a motion to dismiss on sufficiency grounds, the evidence presented to the grand jury must set forth prima facie proof of the crimes charged (*see People v Bello*, 92 NY2d 523, 525-526 [1998]; CPL 70.10). Here, the evidence submitted before the grand jury satisfies this requirement to the extent that defendant is a public servant and that he accepted a benefit. Assuming for a moment that defendant was in violation of his duties as a public servant, it was also reasonable for the grand jury to infer that defendant received the benefits for having violated his judicial duties. Defendant urges us to interpret Penal Law § 200.25's element that the public servant be in violation of his duty, to exempt judges because they are subject to what he deems the ethically-driven Rules of Judicial Conduct. We reject his contention.

The People set forth evidence that defendant offered ex parte advice to Siminovsky, an attorney appearing in a case pending before him. The evidence further showed that the advice conveyed was substantive in nature in that defendant informed

Siminovsky that his client would prevail even though the client did not deserve to win. It was reasonable for the grand jury to find that defendant violated his explicit duty not to "initiate, permit, or consider ex parte communications . . . concerning a pending or impending proceeding" (22 NYCRR 100.3 [B] [6]).

The same is true as to defendant's referral of cases to Siminovsky. The evidence presented to the grand jury supports an inference that defendant, in referring potential clients to Siminovsky, was lending the prestige of his judicial office for the sake of advancing private interests—both his own and Siminovsky's. The grand jury could rationally have found that defendant meant for the clients to be influenced by his judicial position when they selected the lawyer he recommended, and also that defendant expected to be compensated by Siminovsky for the referrals. We do not imply that a judge, acting in a purely private, unofficial capacity, may not refer a friend or acquaintance to a lawyer when the judge expects no benefit for doing so (*see* Advisory Comm on Jud Ethics Op 93-89 [1993]); but the grand jury could have concluded that that is not what happened here.

We are further governed by the principle that "we must interpret a statute so as to avoid an 'unreasonable or absurd' application of the law" (*People v Santi*, 3 NY3d 234, 244 [2004], quoting *Williams v Williams*, 23 NY2d 592, 599 [1969]; *see also People v Kramer*, 92 NY2d 529, 539 [1998] [a court may consider whether one reading of the statute "might produce absurd and fundamentally unfair results"]; *Matter of New York State Assn. of Criminal Defense Lawyers v Kaye*, 96 NY2d 512, 519 [2001] ["courts have repeatedly rejected statutory constructions that are unconscionable or antithetical to legislative objectives"]). "The law binds all men equally, the Judges no less than the judged" (*Matter of Stern v Morgenthau*, 62 NY2d 331, 339 [1984]; *see also Matter of Mason [State Commn. on Jud. Conduct]*, 100 NY2d 56, 60 [2003] ["Judges must be held to a higher standard of conduct than the public at large"]).

To hold otherwise, as urged by the dissent, would lead to the incongruous result of insulating judges from criminal liability under Penal Law § 200.25 because they have a formal body of rules governing their conduct while subjecting other public servants—whose duties are not defined in either Penal Law § 200.25 or any express code of conduct comparable to the Rules—to criminal liability for similar conduct. Such a result not only effectively immunizes judges but also runs counter to

the legislative objective of deterring public servants from, and prosecuting them for, abusing their positions (*cf. People v Jaehne*, 103 NY 182, 195 [1886] ["The crime of bribery . . . impairs public confidence in the integrity of official administration, a confidence most necessary to be maintained"]).

A comparison to prosecutions under Penal Law § 200.35 further exposes the flaw in the dissent's position.[5] Under that statute, a judge who accepts a benefit for *authorized* conduct can be prosecuted for receiving unlawful gratuities. However, if the conduct was *unauthorized*, as it is alleged here, defendant would be immunized from prosecution under the rationale set forth by the dissent since the People relied on the Rules of Judicial Conduct to establish the violations. We see no justification for such a perverse result—not in the plain language of the statute, not in the legislative history, and not in our precedents.

Thus we conclude that the People may rely on the Rules of Judicial Conduct to prove the element of a judge's "duty as a public servant" within the meaning of Penal Law § 200.25. The Rules are a compendium of regulations that insures the integrity of the judiciary and the resultant confidence and impartiality that must repose in the justice system. Any other construction runs afoul of these goals. We hold the evidence presented to the grand jury is legally sufficient, in accordance with CPL 70.10, and supports every element of counts one through six of the indictment charging defendant with violating his duties as a public servant and then accepting benefits in exchange for those violations.

## III.

In support of his position that the Rules cannot supply that necessary element, defendant, like the dissent, views our holding in *People v La Carrubba* (46 NY2d 658 [1979]) as a bar to prosecuting judges who violate an explicit code of conduct. In *La Carrubba*, a judge was charged with official misconduct under Penal Law § 195.00 (2) for improperly dismissing, for failure to prosecute, a simplified traffic information issued to a personal friend. In that prosecution, the People relied on Canons 2 and 3 of the Code of Judicial Conduct in support of the charges.

---

5. Penal Law § 200.35 reads: "A public servant is guilty of receiving unlawful gratuities when he solicits, accepts or agrees to accept any benefit for having engaged in official conduct which he was required or authorized to perform, and for which he was not entitled to any special or additional compensation."

Unlike the Rules of Judicial Conduct in effect today that have been promulgated pursuant to the State Constitution and Judiciary Law § 212 (2) (d), the Code of Judicial Conduct that existed in 1974 was merely "a compilation of ethical objectives and exhortations" which were "[c]ouched in the subjunctive mood" (46 NY2d at 663). The Code was promulgated by the American Bar Association, adopted by the New York State Bar Association and then subsequently incorporated by reference in the respective rules of the Appellate Divisions. Canon 2 of the Code suggests that "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities" and Canon 3 likewise evokes the proposition that "A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently." We refused to permit a prosecution for official misconduct under Penal Law § 195.00 (2) based upon these violations of the ethical canons contained within the Code of Judicial Conduct. To hold otherwise, we said, would permit "a prosecutor [to] initiate and take charge of proceedings to enforce the Code of Judicial Conduct" (46 NY2d at 664).

Here, there are two significant distinctions from *La Carrubba*. First, the Rules of Judicial Conduct do not present the same notice and enforcement concerns that we faced with the Code of Judicial Conduct in *La Carrubba*. Whereas the Code encouraged judges to act with utmost ethical forethought—it was framed in suggestive terms and applicable only as adopted by the Appellate Divisions—the Rules of Judicial Conduct are rooted in a constitutional amendment of State Constitution, article VI, § 20 (b) which states that "[j]udges and justices of the courts . . . *shall* also be subject to such rules of conduct as may be promulgated by the chief administrator of the courts with the approval of the court of appeals" (emphasis added).[6]

After this constitutional amendment was adopted, the Legislature enacted Judiciary Law § 212 (2) (b), which directs the Chief Administrator of the Courts to "[p]romulgate rules of conduct for judges and justices of the unified court system with the approval of the court of appeals, in accordance with the provisions of section twenty of article six of the constitution." Pursuant to the Constitution and the statute, the Chief Administrator of the Courts promulgated the Rules of Judicial Conduct which were then approved by the Court of Appeals. These Rules,

---

6. Article VI, § 20 of the State Constitution was amended in 1977 and was not applicable to defendant in *La Carrubba*.

including 22 NYCRR 100.2 and 100.3, affirmatively state that a judge "shall" comply with the rules of conduct and set out a basic standard of compliance (*see also* 22 NYCRR part 100 [preamble] ["The text of the rules is intended to govern conduct of judges . . . and to be binding upon them . . . The rules are intended . . . to state basic standards which should govern their conduct and to provide guidance to assist them in establishing and maintaining high standards of judicial and personal conduct"]).

The dissent relies on the preamble of the Rules which also states that "[t]hey are not designed or intended as a basis for civil liability or criminal prosecution" (*see* dissenting op at 631). However, preambles are not controlling of a statute or rule's terms but are simply a useful aid for interpreting them when there is ambiguity (*cf.* McKinney's Cons Laws of NY, Book 1, Statutes § 122). Moreover, our holding is not inconsistent with the preamble because the Rules themselves do not subject judges to criminal sanctions. Here, a breach of the Rules supplies proof that an official duty has been violated. It is the "receiving reward" aspect of defendant's conduct that gives rise to the criminal prosecution, not just the existence or violation of the Rules.

The mandatory nature of the Rules and their constitutional source ameliorate the concerns we expressed in *La Carrubba*. The Rules provide a fundamental objective standard of how judges must conduct themselves. This addresses the concern that a prosecutor could use an advisory, aspirational code of ethics to help prove an element of a crime. It further diminishes any concern that a defendant would not have proper notice of the conduct prohibited, as the Rules and the Penal Law are clear as to their applicability.[7]

A second key difference is that in *La Carrubba* we were concerned with "the permissibility of the enforcement of the provisions of the Code of Judicial Conduct by resort to criminal prosecution" (*La Carrubba*, 46 NY2d at 662). There, the District Attorney was prosecuting the judge for refraining from perform-

---

7. To the extent that defendant raises a vagueness "as applied" challenge to Penal Law § 200.25, we are not persuaded. The failure to define each term in a criminal statute does not render the statute void for vagueness (*see People v Nelson*, 69 NY2d 302 [1987]). The statute at issue, as applied to these facts, is "sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" (*People v Stuart*, 100 NY2d 412, 420 [2003] [citations and internal quotation marks omitted]).

ing duties inherent to the nature of her office—the duties to avoid the appearance of impropriety and to act impartially. In essence, the Penal Law was being used as a vehicle to pursue claims of "ethical impropriet[ies]" which, contrary to the intent of the Legislature, effectively did nothing more than permit the prosecutor to "take charge of proceedings to enforce the Code of Judicial Conduct" (*La Carrubba*, 46 NY2d at 664).

In the present case, the criminal prosecution rests not on a violation of the Rules alone but on the acceptance of a benefit for violating an official duty defined by the Rules. Thus, a public servant who violates a tangible duty and further "solicits, accepts or agrees to accept" a benefit for the breach, is subject to prosecution under Penal Law § 200.25.[8] Had the judge as a public servant violated ethical duties alone—without accepting a benefit for the violation—and had the action not otherwise been prohibited by the Penal Law, the public servant would be subject only to discipline in a proceeding brought by the Commission on Judicial Conduct. This critical distinction alleviates many of the concerns we had in *La Carrubba*, including the concern that to allow criminal prosecution of ethical violations under Penal Law § 195.00 (2) would create an "awkward and often unseemly" landscape where different groups would likely "jockey for prosecutorial priority or advantage" (46 NY2d at 665).[9]

We thus reject defendant's argument that *La Carrubba* is controlling here. The People's use of the Rules of Judicial Conduct to establish the duty element before the grand jury in this case did not render the proof insufficient or the indictment defective.

The People's remaining claim as it relates to the dismissal of the charge of official misconduct in violation of Penal Law § 195.00 (2) is meritless.

Accordingly, the order of the Appellate Division should be modified by reinstating six counts charging defendant with receiving reward for official misconduct in the second degree and, as so modified, affirmed.

---

8. *See e.g. United States v Davis*, 183 F3d 231, 245 (3d Cir 1999); *Re-Source N.E. of Long Is., Inc. v Town of Babylon*, 80 F Supp 2d 52 (ED NY 2000); *People v Blumenthal*, 55 AD2d 13 (1st Dept 1976).

9. Certainly there are violations where the same conduct can form the basis of a criminal prosecution and an administrative proceeding. The burdens of proof are different, as are the penalties that may be imposed, and both can be prosecuted in tandem. Typically, the criminal prosecution goes forward first and the disciplinary proceeding is held in abeyance pending the outcome of the criminal prosecution.

G.B. Smith, J. (dissenting in part). The primary issue here is whether the Rules of Judicial Conduct may be used as criminal statutes to prosecute a judge. I agree with the trial court and the Appellate Division that the Rules are not criminal statutes. Thus, the evidence before the grand jury was legally insufficient to sustain 8 of the 11 charges in the consolidated indictments (Nos. 3515/2003 and 5332/2003).

## Facts

The People assert that there was an ongoing improper attorney-judge relationship between Paul Siminovsky and defendant over a period of three years, including lunches, drinks, money and cigars in exchange for ex parte advice on cases pending before the judge, client referrals, and favorable treatment in the courtroom.

From approximately October 1, 2002 to March 4, 2003, defendant had ex parte conversations with attorney Siminovsky about the Avraham Levi case, a divorce case pending before him. The conversations involved advice about how to proceed in the case, statements concerning how defendant would rule on the distribution of property between the parties, and suggestions about what questions Siminovsky should ask the witnesses. The People claim that these conversations violated 22 NYCRR 100.3 (B) (6).[1]

On March 4, 2003, defendant accepted two boxes of cigars from Siminovsky for giving him advice in the Levi case. According to the People, defendant violated Judiciary Law § 18[2] when he accepted the cigars. The People claim that the defendant also

---

1. 22 NYCRR 100.3:
   "A judge shall perform the duties of judicial office impartially and diligently. . . .
   "(B) Adjudicative responsibilities. . . .
   "(6) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers concerning a pending or impending proceeding."

2. Judiciary Law § 18 states: "A judge or other judicial officer shall not demand or receive a fee or other compensation for giving his advice in an action, claim, matter, motion or proceeding pending before him, or which he has reason to believe will be brought before him for decision."

   Count three of indictment No. 5332/2003 charged defendant with the crime of official misconduct in violation of Penal Law § 195.00 (2) committed on March 4, 2003 when defendant "refrained from performing a duty, pertaining

accepted money for referring clients to Siminovsky on five separate dates, including October 9, 2001; October 31, 2001; September 5, 2002; November 15, 2002; and March 10, 2003. Client referrals from a judge to an attorney are alleged to be violations of 22 NYCRR 100.2 (C).[3]

Also from January 1, 2002 through March 12, 2003, defendant accepted lunches, beverages and cigars from Siminovsky in exchange for "assigning law guardianships, and giving ex parte advice to Siminovsky concerning cases that were pending before defendant."

In February 2003, during the Avraham Levi divorce case, the Kings County District Attorney began a video and audio surveillance of the judge's robing room. During that surveillance, defendant and Siminovsky discussed the following: subpoenaing an expert witness, the fact that the defendant was not going to order the sale of the house, that Levi would get exclusive use of the home and that Levi would win the case, even though he did not deserve it.

In early 2003, the District Attorney's office arrested Siminovsky who agreed to cooperate with the prosecutor. On March 4, 2003, Siminovsky gave defendant two cigars which had been purchased by the District Attorney's office. Unbeknownst to Siminovsky, the District Attorney continued to conduct video and audio surveillance of defendant's robing room.

On March 10, 2003, Siminovsky, wearing a recording device, handed defendant 10 $100 bills which had been given to him by

---

to his receipt of a box of cigars from Paul Siminovsky." In responding to a demand in a bill of particulars to identify the duty that defendant refrained from performing, the People alleged, "The defendant refrained from performing the duty that was imposed upon him by Jud. L. § 18 to refuse the box of cigars as compensation for providing advice to Siminovsky about the Levi divorce case and to return such compensation."

3. 22 NYCRR 100.2:

"A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.

"(A) A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

"(B) A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment.

"(C) A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness."

the Kings County District Attorney. Defendant placed the money in his pocket. However, shortly thereafter, he called Siminovsky on his cell phone and asked him to return. After conferring with the District Attorney, Siminovsky returned to defendant's chambers.

Defendant tried to return part of the money. Instead of the money, defendant asked that Siminovsky write a check for Robin Garson's (defendant's wife) judicial campaign which had experienced a shortfall. In the end, defendant kept the $1,000, and Siminovsky agreed to write a check. Defendant was arrested on March 12, 2003. At the time of arrest, defendant had the $1,000 in his pockets.

Indictment No. 3515/2003 charged defendant with one count of receiving reward for official misconduct in the second degree (Penal Law § 200.25)[4] for accepting a box of cigars, five counts of receiving reward for official misconduct in the second degree (Penal Law § 200.25) for referral fees, one count of official misconduct (Penal Law § 195.00 [1]) pertaining to ex parte advice to Paul Siminovsky (Penal Law § 195.00 [1])[5] and one count of receiving unlawful gratuities (Penal Law § 200.35).[6]

Indictment No. 5332/2003 charged defendant with one count of bribe receiving in the third degree (Penal Law § 200.10)[7] for

---

4. Penal Law § 200.25:
   "Receiving reward for official misconduct in the second degree.
   "A public servant is guilty of receiving reward for official misconduct in the second degree when he solicits, accepts or agrees to accept any benefit from another person for having violated his duty as a public servant."

5. Penal Law § 195.00:
   "Official misconduct
   "A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
   "1. He commits an act relating to his office but constituting an unauthorized exercise of official functions, knowing that such act is unauthorized."

6. Penal Law § 200.35 states,
   "A public servant is guilty of receiving unlawful gratuities when he solicits, accepts or agrees to accept any benefit for having engaged in official conduct which he was required or authorized to perform, and for which he was not entitled to any special or additional compensation."

7. Penal Law § 200.10, a class D felony, states,
   "A public servant is guilty of bribe receiving in the third degree when he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his vote,

agreeing to provide favorable treatment to Siminovsky. For accepting the cigars concerning the advice on the Levi case, defendant was charged with two counts of official misconduct (Penal Law § 195.00 [1], [2]). By indictment No. 5332/2003, defendant was also charged with a third count of official misconduct (Penal Law § 195.00 [1]), "which superseded the count of official misconduct in indictment number 3515/03."

On September 9, 2003, Supreme Court, Kings County consolidated indictment No. 3515/2003 with indictment No. 5332/2003 and dismissed as superceded the count of official misconduct charged in indictment No. 3515/2003.

Motion to Dismiss

On December 15, 2003, defendant moved to dismiss the indictments as based upon legally insufficient evidence. Defendant argued that judicial rules of conduct cannot serve as predicates for criminal charges. Also, defendant argued that receiving the box of cigars was not compensation within Judiciary Law § 18.

On April 29, 2004, Supreme Court, Kings County, dismissed six counts of receiving reward for official misconduct in the second degree (Penal Law § 200.25) finding:

> "[I]n any prosecution for receiving reward for official misconduct, the evidence must identify a duty the defendant had as a public servant, and must establish that he or she violated that duty and thereafter solicited, accepted or agreed to accept a benefit for having done so. . . .

> "In sum, although the Chief Administrator of the Courts has properly promulgated enforceable ethical standards, I hold that he has not discharged, nor has he attempted to discharge, the legislative responsibility of defining elements of crimes. Accordingly, evidence presented to the grand jury that the defendant violated the Rules of the Chief Administrator is legally insufficient to establish that he violated a duty he had as a public servant within the meaning of the Penal Law. The grand jury evidence, therefore, fails to establish an essential element of each of the counts charging the crime of receiving reward for official misconduct in the second degree." (4 Misc 3d 258, 261-267 [2004].)

---

opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced."

In reference to official misconduct (Penal Law § 195.00), there were three charges. Two were dismissed as based upon legally insufficient evidence and one was sustained as based on defendant's acceptance of a box of cigars "as compensation" for ex parte advice on the Avraham Levi divorce case pending before him. His acceptance of the box of cigars was in violation of his duty not to accept compensation for engaging in authorized or unauthorized conduct.

On the charge of receiving unlawful gratuities, the motion court wrote:

> "A review of the testimony and exhibits presented to the grand jury reveals that the evidence was legally sufficient to support the count charging the defendant with the class A misdemeanor of receiving unlawful gratuities in that he allegedly accepted benefits from an attorney for having engaged in official conduct as a judge which he was authorized to perform, and for which he was not entitled to any special or additional compensation (Penal Law § 200.35)." (4 Misc 3d at 268.)

Supreme Court concluded, "The case will therefore proceed to trial on the top count of bribe receiving in the third degree, on one count of official misconduct, and on one count of receiving unlawful gratuities." (*Id.* at 277.)

On April 25, 2005, the Appellate Division, Second Department affirmed, writing:

> "The court properly dismissed counts one through six of indictment No. 3515/03, charging the defendant with receiving reward for official misconduct in the second degree. An indictment in which the defendant's duty as a public servant, an essential element of the crime of receiving reward for official misconduct (Penal Law § 200.25), is defined solely by reference to the Rules of Judicial Conduct, specifically, 22 NYCRR 100.2 (C) and 100.3 (B) (6), is insufficient (*see People v La Carrubba,* 46 NY2d 658, 665 [1979]).

> "The court also properly dismissed count three of indictment No. 5332/03, charging the defendant with official misconduct (Penal Law § 195.00 [2]), as multiplicitous, since there is no fact to be proven under that count that is not also required to be

proven under count two of the same indictment"
(17 AD3d 695 [2005] [citations omitted]).

On June 24, 2005, the Chief Judge of the Court of Appeals granted leave to appeal to the People. The People seek to reinstate six counts of receiving reward for official misconduct in the second degree (Penal Law § 200.25) and one count of official misconduct as defined by Penal Law § 195.00 (2).

## Discussion

The New York State Constitution, the Rules of Judicial Conduct and the Penal Law do not authorize a prosecutor to charge a judge with crimes by alleging violations of the Rules of Judicial Conduct.

### Constitution and Preamble of Rules of Judicial Conduct

Article III, § 1 of the New York State Constitution states, "The legislative power of this state shall be vested in the senate and assembly."

"Th[e] legislative power cannot be passed on to others. What is legislative and what [is] administrative is not always easy to define, but the difficulty is not apparent here" (*see Darweger v Staats*, 267 NY 290, 305 [1935]). "Authority to make administrative rules is not a delegation of legislative power, and such rules do not become legislation because violations thereof are punished as public offenses" (*see id.* at 306). The clearest reading of 22 NYCRR part 100 is that it consists of rules governing judicial conduct, not criminal statutes passed by the Legislature, the only body in this state that can make conduct criminal.

The preamble of the Rules of Judicial Conduct makes clear that they were not intended to be criminal statutes:

> "The rules governing judicial conduct are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances. The rules are to be construed so as not to impinge on the essential independence of judges in making judicial decisions.
>
> *"The rules are designed to provide guidance to judges and candidates for elective judicial office and to provide a structure for regulating conduct through disciplinary agencies. They are not designed or intended as a basis for civil liability or criminal prosecution"* (emphasis supplied).

The sections of the Rules of Judicial Conduct used in the criminal prosecution of this defendant are 22 NYCRR 100.2 (C) and 100.3 (B) (6). There is nothing in the preamble to suggest that criminal prosecution can result from any violation of the Rules. Further, the preamble explicitly states that criminal prosecution should not result from the Rules. Consequently, defendant was not on notice that the rules of conduct could result in criminal prosecution. Notice, of course, is an essential requirement prior to prosecution (*see La Carrubba*, 46 NY2d at 663, *supra*).

The prosecution has charged the defendant twice for the same crime. Defendant allegedly accepted the cigars for giving ex parte advice in the Levi case. The advice and the compensation were, however, all one offense. The People cannot charge official misconduct once for the advice and a second time for the compensation because the offense was receiving compensation for giving advice. Thus, only one count of official misconduct is warranted based upon Judiciary Law § 18 where the judge did "receive . . . compensation for giving his advice in an action . . . pending before him."

Grand Jury Charges and Legally Sufficient Evidence

The prosecutor charged the grand jury as though the Rules of Judicial Conduct were criminal statutes. On May 20, 2003, the prosecutor charged the grand jury on the rules that govern judicial conduct, not on the criminal law, reciting, verbatim, two provisions of the Rules of Judicial Conduct. They were the following:

22 NYCRR 100.2, which is headed: "A Judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities." Subdivision (C) states:

"A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge."

22 NYCRR 100.3, which is headed: "A judge shall perform the duties of judicial office impartially and diligently." Subdivision (B) (6) states:

"A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A

judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers concerning a pending or impending proceeding, except: . . .

"Ex parte communications that are made for scheduling or administrative purposes that do not affect a substantial right of any party are authorized, provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and the judge, insofar as practical and appropriate, makes provision for prompt notification of other parties or their lawyers of the substance of the ex parte communication and allows an opportunity to respond. . . .

"A judge, with the consent of the parties, may confer separately with the parties and their lawyers on agreed-upon matters."

Concerning indictment No. 3515/2003, the prosecutor instructed the grand jury that it could indict the defendant for violating the Rules of Judicial Conduct if it determined that defendant had accepted cigars, accepted money, referred persons to Paul Siminovsky or gave advice.

Pursuant to CPL 190.65, a grand jury indictment is authorized as follows:

"1. Subject to the rules prescribing the kinds of offenses which may be charged in an indictment, a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense provided, however, such evidence is not legally sufficient when corroboration that would be required, as a matter of law, to sustain a conviction for such offense is absent, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense."

Legally sufficient evidence is defined under CPL 70.10 (1) as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof." Three crimes alleged in the consolidated indictment are authorized because they charge violations of the

Penal Law. The Rules of Judicial Conduct were not meant to serve as elements of criminal statutes or as criminal statutes. The charges given to the grand jury by the prosecutor indicate that the People are alleging both violations of the Penal Law and violations of the Rules of Judicial Conduct in prosecuting defendant.

The Rules of Judicial Conduct are rules of ethics and not criminal statutes or predicates for criminal statutes. There has been no legislative enactment allowing for their use in criminal prosecution and the Rules have not been subjected to any standards of proof. Further, the burden of proof for violations under the judicial rules of conduct is "preponderance of the evidence" whereas, for felonies, it is beyond a reasonable doubt (*see Matter of Collazo [State Commn. on Jud. Conduct]*, 91 NY2d 251, 253 [1998]).

In *Matter of Stern v Morgenthau* (62 NY2d 331, 333 [1984]), this Court determined that the grand jury's purpose and investigations would not be thwarted if the prosecutor is not allowed to have access to "confidential records of the State Commission on Judicial Conduct" which developed as part of the Commission's investigation into misconduct by two judges. Specifically, this Court held that the grand jury and the Commission "serve quite different purposes" (*see id.* at 334). The Court illuminated the difference with the following words:

> "The Grand Jury is drawn from the population at large and charged with the duty of investigating and preferring charges against those suspected of criminal conduct while the Commission is composed of members appointed for fixed terms as defined in the Constitution and charged with the duty of investigating misconduct in the judicial branch of government and imposing discipline if misconduct is found. Thus, while the two bodies serve similar functions, they are separate and independent. One is responsible for investigating crime; the other for disciplining Judges." (*Id.*)

The difference addressed in *Stern* between the grand jury and the Commission on Judicial Conduct is relevant to the case at bar. In order to prosecute defendant under the consolidated indictment, the People must show that defendant violated duties as a public servant defined in the Penal Law and separate and apart from the rules that govern judicial conduct. The indictment repeatedly makes reference to "being a public servant."

However, except for the charge referred to in footnote 2 (at 619), there is no reference to what duties in the criminal statutes defendant violated.

The People argue that the Rules put judges on notice that if they engage in "official misconduct," they will be held accountable for their actions through criminal prosecution. Further, failure to prosecute judges for engaging in illegitimate actions will have a negative effect on the public's confidence in the judiciary. According to appellant, defendant failed not only in his duty as a public servant but also in not complying with both the judicial rules of conduct and the criminal statutes. Defendant asserts that there are no cases which hold that a judge can be criminally liable for failure to comply with the judicial rules of conduct. Defendant argues, "Simply put, that a judge has a duty to comply with the Rules does not mean that compliance with those Rules is enforceable under the Penal Law."

There appear to be no statutes and no cases that hold that a judge can be held criminally liable for failure to comply with the Rules of Judicial Conduct. There is no question that the prosecutor has amassed a great deal of damning evidence against the defendant. However, what is at issue is whether or not Rules of Judicial Conduct (22 NYCRR part 100) can be used as a predicate for criminal prosecution, not whether or not there is enough evidence to prosecute the defendant.

One count of bribe receiving in the third degree (Penal Law § 200.10) for "accepting benefits from Siminovsky upon an agreement or understanding that defendant would provide Siminovsky with favorable treatment" is legally sufficient. Second, defendant allegedly accepted a box of cigars and two loose cigars for providing advice on the Levi divorce case which was pending before him. As a result of these actions, the charge that the judge violated Penal Law § 195.00 by accepting compensation for giving advice is appropriate (see La Carrubba, 46 NY2d 658, 664 [1979], supra). Thus, one charge of official misconduct is appropriate. Third, the evidence was legally sufficient to establish one count of receiving unlawful gratuities in violation of Penal Law § 200.35 because defendant accepted the cigars for advice concerning the Levi divorce case. However, the evidence was legally insufficient to sustain the other six charges pursuant to Penal Law § 200.25.

*People v La Carrubba*

Relying on *People v La Carrubba* (46 NY2d 658, 664-665 [1979]), both the Supreme Court and the Appellate Division found that the Code cannot be used in such a manner. In *La Carrubba*, this Court held:

> "We find nothing in section 195.00 of the Penal Law which suggests that by the device of incorporation by reference a prosecutor may initiate and take charge of proceedings to enforce the Code of Judicial Conduct as such. To accept the proposition advanced by [appellant] District Attorney would be to countenance the institution of criminal proceedings for any alleged violation of the provisions of the code. We perceive no intention on the part of the Legislature to cloak the District Attorney with responsibility for compelling conformity with the Code of Judicial Conduct." (46 NY2d 658, 664-665 [1979], *supra*.)

In *La Carrubba*, the issue was enforcement of Penal Law § 195.00 (2) for official misconduct by a judge. This Court determined that judges can be prosecuted for criminal acts but not on the basis of the judicial rules of conduct which were never meant to serve as part of the penal code (*see* 46 NY2d 658, 663 [1979], *supra*). In this case, judges are not put on notice that misconduct under the Rules of Judicial Conduct could serve as a basis for criminal prosecution (*see id.*). Thus, as the Supreme Court has found, the prosecution in the case at bar is precluded from imposing criminal penalties under Penal Law § 200.25 based upon 22 NYCRR 100.2 and 100.3. While the Rules of Judicial Conduct are meant to include sanctions which can include removal from the bench (*see Matter of Sims [State Commn. on Jud. Conduct]*, 61 NY2d 349, 356 [1984]; *Matter of VonderHeide [State Commn. on Jud. Conduct]*, 72 NY2d 658, 660-661 [1988]), there is no indication that the Rules were meant to be used as a predicate for criminal sanctions (*see La Carrubba*, 46 NY2d 658, 664-665 [1979], *supra*; *People v Stuart*, 100 NY2d 412, 419 [2003]). As a result, the six charges of receiving reward for official misconduct in the second degree, as outlined by the Supreme Court, were properly dismissed.

Finally, the majority refers to language in *La Carrubba* that "the Code of Judicial Conduct that existed in 1974 was merely 'a compilation of ethical objectives and exhortations' which were '[c]ouched in the subjunctive mood,'" adopted by the

American Bar Association, then the New York State Bar Association and then "incorporated by reference in the respective rules of the Appellate Divisions." (Majority op at 616.) Thus, the Code consisted of rules adopted by the Appellate Divisions. Here, the Rules of Judicial Conduct were promulgated by the Chief Administrator of the Courts and designed to "provide guidance to judges and candidates for elective judicial office and to provide a structure for regulating conduct through disciplinary agencies." (22 NYCRR part 100 [preamble].) The Legislature thus directed the Chief Administrator of the Courts to adopt rules of conduct, not criminal statutes.

New York State Constitution, Article VI, § 20 (b) and Judiciary Law § 212 (2) (b)

The overriding principle that governs in this instance is whether it was the legislative intent to make criminal judicial conduct based upon the Rules of Judicial Conduct. The principle in effect in this case, as has been true in other cases, is that "legislative intent is the great and controlling principle" (*see Matter of Theroux v Reilly*, 1 NY3d 232, 244 [2003]; *Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *Staats*, 267 NY 290, 306 [1935], *supra*). There is no evidence that the Rules of Judicial Conduct were meant as a predicate for criminal prosecution.

New York Constitution, article VI, § 20 (b) states in part, "Judges and justices of the courts specified in this subdivision shall also be subject to such rules of conduct as may be promulgated by the chief administrator of the courts with the approval of the court of appeals." No evidence is submitted that indicates any Judge of this Court intended the Rules of Judicial Conduct to be a portion of any criminal statute without specific language from the Legislature designating such conduct a crime. Judiciary Law § 212 (2) (b) states that the Chief Administrator of the Courts shall "[p]romulgate rules of conduct for judges and justices of the unified court system with the approval of the court of appeals, in accordance with the provisions of section twenty of article six of the constitution." Again, no evidence is submitted that any Judge of this Court determined that a vote for the Rules of Judicial Conduct was a vote for a criminal statute or part of a criminal statute. Moreover, no evidence is submitted that the Legislature intended that by referring to the constitutional provision permitting the Chief Administrator of the Courts to promulgate rules of judicial conduct, it was also making such rules, which were to be promulgated in the future, crimes for which a prosecutor could indict.

Vagueness

Defendant was not on notice that violations of the Rules of Judicial Conduct would result in violations of the criminal statute. Therefore, it would be a violation of defendant's due process rights if appellant's arguments were accepted and the prosecution proceeded, with proof of crimes based on the Rules of Judicial Conduct.

A statute is unconstitutionally vague when it does not give "fair notice to those to whom [it] is directed" that their behavior may subject them to criminal prosecution (see American Communications Assn. v Douds, 339 US 382, 412 [1950]; People v Stuart, 100 NY2d 412, 418 [2003]). In People v Stuart, this Court laid out a two part test for determining whether a statute is void for vagueness. First, a court must determine "whether the statute in question is 'sufficiently definite "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" ' " (see 100 NY2d 412, 420 [2003], supra, quoting People v Nelson, 69 NY2d 302, 307 [1987]). Second, the statute must be reviewed to determine "whether the enactment provides officials with clear standards for enforcement" (see Stuart, 100 NY2d at 420, supra). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" (see Kolender v Lawson, 461 US 352, 357 [1983] [citations omitted]).

The Rules of Judicial Conduct state specifically, "They are not designed or intended as a basis for civil liability or criminal prosecution." (22 NYCRR part 100 [preamble].) The stated purpose of the Rules alone renders specific rules vague if used for criminal prosecution. There is nothing in the Rules themselves that remotely suggests criminal prosecution. In fact, the duties at issue are related to rules of conduct for the profession rather than criminal standards of official misconduct. Certainly, defendant was on notice that his conduct would violate sections of the Penal Law. He was also on notice that his conduct violated the Rules of Judicial Conduct which could lead to charges by the Commission on Judicial Conduct.

The words of the motion court that dismissed the charges on appeal here are entirely relevant:

"Section 20 (a) of article VI of New York's Constitu-

tion provides that 'Judges . . . shall . . . be subject to such rules of conduct as may be promulgated by the chief administrator of the courts with the approval of the court of appeals.' . . .

"Much like the Code of Judicial Conduct which it parallels, the Rules of Judicial Conduct part of the Rules of the Chief Administrator of the Courts (22 NYCRR part 100) is, in large measure, a compilation of ethical standards, goals, and aspirations that are stated in broad and general terms. Thus, for example, the rules provide that '[a] judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved' (22 NYCRR 100.1), and that '[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary' (22 NYCRR 100.2 [A]), and that '[a] judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control' (22 NYCRR 100.3 [B] [3]).

"The notion that rules like these can define an element of a crime is untenable. . · . .

"In light of both their language and their application, the two rules at issue here are problematic when employed to define an element of a crime. And, significantly, they were never meant to be used for that purpose." (4 Misc 3d 258, 263-265 [2004].)

The Majority Decision

First, the majority asserts that the preamble of the Rules of Judicial Conduct which states, "They are not designed or intended as a basis for civil liability or criminal prosecution," is not controlling and cites McKinney's Cons Laws of NY, Book 1, Statutes § 122 in support of its position. Section 122 does not support the majority and states:

"The preamble or preliminary recitals of a statute are no part of the statute and do not control or af-

fect its terms, although they may be considered as an aid to interpretation when the body of the act is not free from ambiguity."

"However, a preamble frequently contains recitals which illuminate the purpose and intent of the enactment. In fact, it is said to be the key which opens the mind of the lawmakers as to the mischiefs which are intended to be remedied by the statute, and it may sometimes be considered in determining legislative intent. Accordingly, the language of a preliminary recital may be considered as an aid to interpretation when the body of the act is not free from ambiguity, and a legislative declaration concerning public conditions is entitled to great respect though it is not conclusive." (Statutes § 122, Comment [emphasis added].)

The underscored portion indicates that a preamble may indicate the intent of the Legislature. While we are not dealing with a statute here, even if section 122 applies, it supports the fact that the Rules of Judicial Conduct are not criminal statutes. It does so by its explicit words.

The majority indicates that since the language of the rules is "mandatory" (majority op at 616) rather than precatory, a person of reasonable intelligence is on notice of possible criminal prosecution. There is not a single case that supports the majority's assertion that defendant was on notice that the Rules of Judicial Conduct would serve as the basis for a criminal prosecution. As a result, whether the word "shall" or "may" is used does not suffice for purposes of notice in relation to criminal prosecution (*People v Stuart, supra* [words not sufficiently definite for purposes of criminal prosecution]).

Second, a criminal prosecutor becomes the judge of when and how a rule of judicial conduct becomes criminal. The majority does not define the duties that can lead to criminal prosecution as opposed to sanctions by the Commission on Judicial Conduct. Does a judge now risk criminal prosecution when he or she advises a relative or friend that a particular lawyer is well suited to handle a case? Is a judge improperly exercising his or her authority when a recommendation is given to a law school? What if a judge recommends one school over another? Suppose a judge is on a not-for-profit board of directors and his or her name inadvertently appears on a notice of a fundraiser, a matter forbidden by the Rules? Should

a judge refrain from all of these things because he or she lends the prestige of the office and promotes the interest of the judge or another person in violation of 22 NYCRR 100.2? Which rules subject a judge to criminal prosecution and which do not?

Third, the Commission on Judicial Conduct which is given constitutional authority in article VI, § 22 of the New York State Constitution to investigate and determine whether judicial conduct violates the Rules is now placed in a secondary position. Section 22 states in part:

> "There shall be a commission on judicial conduct. The commission on judicial conduct shall receive, initiate, investigate and hear complaints with respect to the conduct, qualifications, fitness to perform or performance of official duties of any judge or justice of the unified court system, in the manner provided by law; and, in accordance with subdivision d of this section, may determine that a judge or justice be admonished, censured or removed from office for cause, including, but not limited to, misconduct in office, persistent failure to perform his or her duties, habitual intemperance, and conduct, on or off the bench, prejudicial to the administration of justice, or that a judge or justice be retired for mental or physical disability preventing the proper performance of his or her judicial duties."

Does the Commission on Judicial Conduct now wait to see if there is going to be a criminal prosecution before it acts?

Conclusion

It is simply incorrect that judges are immune from the criminal law if the Rules of Judicial Conduct do not authorize a criminal action. This defendant, without reference to the Rules of Judicial Conduct, is being prosecuted for bribe receiving in the third degree (Penal Law § 200.10), official misconduct (Penal Law § 195.00 [2]) and receiving unlawful gratuities (Penal Law § 200.35).

For the foregoing reasons, I dissent in part and would affirm the dismissal of six counts of receiving reward for official misconduct in the second degree and one count of official misconduct.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur with Judge CIPARICK; Judge G.B. SMITH dissents in part and votes to affirm in a separate opinion.

Order modified by reinstating six counts charging defendant with receiving reward for official misconduct in the second degree and, as so modified, affirmed.