OPINION OF THE COURT
 

 Per Curiam.
 

 On this appeal, we determine the extent of authority that Judiciary Law § 35-b confers on the Court of Appeals in con
 
 *515
 
 nection with the rate of compensation for assigned counsel in capital cases.
 

 Judiciary Law § 35-b
 
 [1]
 
 provides for four-member screening panels, one for each Judicial Department, charged with proposing and periodically updating fee schedules for assigned capital counsel, in consultation with the Administrative Board of the Courts.
 
 [2]
 
 The fee schedules are subject to approval by the Court of Appeals.
 

 In November 1996, the Court of Appeals, acting in its administrative capacity, approved the Capital Counsel Fee Schedules submitted by each Department’s panel. All four schedules set hourly fees for lead counsel at $175 and for associate counsel at $150. The schedules also set hourly rates for “reasonably necessary” additional legal and paralegal assistance.
 

 
 *516
 
 In accordance with the legislative mandate that it periodically update the fee schedules, the Court of Appeals, in September 1997, directed the panels to reexamine capital counsel fees in light of experience and empirical data. The Administrative Board of the Courts recommended a bifurcated compensation scheme, reducing the lead counsel hourly rate to $100 for services before the prosecution announces its intent to seek the death penalty and $125 for post-notice representation. The Administrative Board also recommended reducing the associate counsel rate to $75 pre-notice and $100 post-notice. The screening panels for the Second, Third and Fourth Departments adopted the recommendations. The First Department Panel, however, was deadlocked. Two panel members supported the fee reductions and two recommended that the existing rates remain the same. By order dated December 16, 1998, the Court of Appeals, in its administrative capacity, approved the recommended reductions and ordered them applicable to all four Departments.
 

 In April 1999, petitioners, the New York State Association of Criminal Defense Attorneys, on behalf of its members certified to accept capital cases, and four individual attorneys, commenced this CPLR article 78 proceeding seeking to annul the December 1998 order, contending that respondents exceeded their administrative capacity when they revised the rates in the First Department, and that the reduced fee schedules did not meet the standards of Judiciary Law § 35-b for adequate compensation. Supreme Court dismissed the petition on the merits, finding that petitioners failed to establish that the order was made in violation of lawful procedure, was affected by an error of law or was unreasonable, irrational or an abuse of discretion. Without reaching the merits, the Appellate Division affirmed, holding that petitioners lacked standing to challenge the administrative order. This Court granted leave to appeal.
 
 [3]
 

 While the Appellate Division decided only the issue of standing and the parties have argued that issue here, we assume, without deciding, that petitioners have standing and we therefore address the merits of the petition
 
 (see, People v Alvaranga,
 
 84 NY2d 985, 986;
 
 People v Lindsay,
 
 72 NY2d 843, 845;
 
 Babigian v Wachtler,
 
 69 NY2d 1012, 1013;
 
 Matter of Roman Catholic Diocese v New York State Dept. of Health,
 
 66 NY2d 948, 951).
 

 
 *517
 
 The issue before us distills to whether the Legislature has delegated the ultimate administrative rule-making authority to the Court of Appeals or to the respective screening panels. Under petitioners’ theory, we need look no further than two phrases in Judiciary Law § 35-b (5) (a): “[e]ach screening panel shall * * *
 
 promulgate *
 
 * * a schedule of fees”; and “which schedule shall be subject to the
 
 approval
 
 of the court of appeals” (emphasis supplied). Petitioners argue that this language vests the screening panels with responsibility to adopt the fee schedules, leaving the Court of Appeals in a strictly reactive role, limited to ratifying or disapproving the fee schedules adopted by the panels. This limited role, petitioners contend, precludes the Court from any legitimate exercise of a more expansive administrative power.
 

 We disagree. The term “promulgate” has a variety of meanings that include: “1. to make known by open declaration: proclaim 2 a: to make known or public the terms of (a proposed law); b: to put (a law) into action or force” (Merriam-Webster’s Collegiate Dictionary 933 [10th ed 1994]). The appropriate definition depends on the setting, and in this case, the legislative intent. We are left with no doubt that under the statutory scheme, “promulgate” means to make known or public the terms of a proposed fee schedule for disposition by the Court of Appeals in its ultimate rule-making authority.
 
 [4]
 

 The language of Judiciary Law § 35-b (5) (a) upon which petitioners focus, and other provisions in that subsection, ascribe a role for the screening panels subordinate to that of the Court of Appeals in setting capital defense counsel fee schedules.
 

 Notably, the Legislature directed that “[p]rior to approving fee schedules, the court shall invite the submission of written comments from interested parties” (Judiciary Law § 35-b [5] [a]). The Legislature thus chose to incorporate a public comment period comparable to that required of an administrative agency under the State Administrative Procedure Act (§ 202 [1] [a]) before that agency exercises its rule-making
 
 *518
 
 authority. Significantly, the Legislature directed that the public comment period take place after the screening panels promulgate the schedules and before the Court of Appeals acts on them. Had the Legislature intended the screening panels to be the predominant or ultimate administrative rule-making bodies, they — and not the Court of Appeals — presumably should have had the benefit of outside criticism and suggestions from the public comment period. Critically, the Legislature set the public comment period stage after the screening panels complete their work. This sequence is inconsistent with petitioners’ interpretation of the word “promulgate” and their view of the primacy of those panels.
 

 Petitioners’ position is also contrary to the overall statutory framework. The capital offense statute assigns to the Court broad administrative responsibilities such as supervising and rule-making regarding collection of proportionality data at the trial level, including developing forms for data reports (see, Judciary Law § 211-a; CPL 470.30 [3] [b]); adopting forms for jury verdicts at the penalty stage (see, CPL 400.27 [15]); adopting rules for appellate procedures regarding mental retardation determinations (see, CPL 400.27 [12] [f]); and the final disposition of the Capital Defender Office’s proposals for determining minimum standards for appointment as lead and associate counsel in capital cases (see, Judiciary Law § 35-b [4] [b] [iv]). The most important of these administrative functions is the Court’s assigned role with respect to legislative fulfillment of the state’s constitutional responsibility to provide competent counsel to capital defendants and to provide a system of compensation for that representation. In discharging its administrative function, the Court’s authority is not restricted to narrow readings of powers expressly conferred by the statute, but includes implied powers necessary for the proper discharge of those broad responsibilities. “Where an agency has been endowed with broad power to regulate in the public interest, we have not hesitated to uphold reasonable acts on its part designed to further the regulatory scheme”
 
 (Matter of City of New York v State of New York Commn. on Cable Tel.,
 
 47 NY2d 89, 92). No less may be said of the authority of the Court of Appeals to carry out its administrative duties.
 

 In interpreting the statute to resolve the basic issue of whether the Court of Appeals’ authority on capital defense fee schedules is primary and independent, or — as petitioners contend — secondary and entirely contingent upon screening panel determinations, we cannot overlook the possible conse
 
 *519
 
 quences of petitioners position. Under their reading of Judiciary Law § 35-b (5) (a), the Court of Appeals is powerless to act on fee schedules in the absence of their promulgation by the screening panels. Thus, the legislative objective in providing for the initial setting of capital defense fee schedules and then their updating could be thwarted by a screening panel default, or paralyzed by its inability to achieve a majority determination in case of deadlock. Had this impasse occurred at the initial stage of capital defense fee schedule adoption, the entire process would have come to a halt. The criminal courts within the First Department would have been stymied, unable to comply with their constitutional and statutory mandate to assign paid counsel to indigent capital defendants. The courts have repeatedly rejected statutory constructions that are unconscionable or antithetical to legislative objectives
 
 (see, Spiegelberg v Gomez,
 
 44 NY2d 920, 921-922;
 
 Matter of United Press Assns. v Valente,
 
 308 NY 71, 83-84;
 
 People v Santoro,
 
 229 NY 277, 281-282;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 143, at 289-290 [legislation “should receive an interpretation which would not lead to unreasonable consequences”]; § 144, at 292 [“A construction which would render a statute ineffective must be avoided”]). For the foregoing reasons, we conclude that the Court of Appeals is the final arbiter for setting fees pursuant to Judiciary Law § 35-b.
 

 Finally, we reject petitioners’ remaining argument that the overall reduction is arbitrary and capricious or jeopardizes the legislative intent to provide adequate court-appointed counsel to capital defendants. Contrary to petitioners’ contentions, the fee schedule approved by this Court is adequate. The record establishes that after considering public comments, surveys, responses from the departmental screening panels and other empirical data and documentation, the Court concluded that the 1996 capital counsel fees should be reduced and that the revised fees would still ensure the availability of competent representation for capital defendants.
 

 Among the documents reviewed by the Court was an April 1998 report prepared for the American Bar Association detailing compensation rates for capital representation in each of the 38 states implementing the death penalty (1998 Report for ABA, Rates of Compensation for CourUAppointed Counsel in Capital Cases at Trial: A State-By-State Overview). That report revealed that the reduced hourly rates were still higher than the available fees in at least 36 of the other 37 states. The Court also reviewed a 1998 report prepared by a subcommittee
 
 *520
 
 of the Judicial Conference of the United States providing an in-depth examination of the rates of compensation for capital counsel in Federal death penalty prosecutions (1998 Report of US Jud Conf on Federal Death Penalty Cases: Recommendation Concerning the Cost ánd Quality of Defense Representation). In its report, the subcommittee adjudged that the maximum Federal rate of up to $125 per hour was sufficient to attract competent defense counsel. Moreover, the report noted that the rates paid for Federal death penalty representation ranged from a high average of $115.82 in 1991 to a low of $79.92 in 1994, with the most recent reported average of $108.84 in 1997. Thus, even the reduced rates approved by this Court exceeded the average rate of compensation actually paid for Federal capital representation.
 

 Significantly, the Court took into consideration that additional state funds were available to provide capital defendants with necessary expert and investigative services and that, unlike some jurisdictions, the Court had declined to set a cap on the total fees available in each case. The confluence of the high rate set in 1996 and the Court’s unwillingness to set a limit on total fees resulted in significant amounts being paid to defense counsel in a number of capital cases.
 

 After carefully reviewing these and other materials submitted, the Court concluded not only that the former rates were higher than necessary to assure competent capital representation but also that the revised rates still exceeded the average rate of compensation nationwide and would continue to attract skilled attorneys to represent capital defendants. This reduction was neither arbitrary nor capricious.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur in Per Curiam opinion; Chief Judge Kaye and Judge Graffeo taking no part.
 

 Order affirmed, without costs.
 

 [1]
 

 . Judiciary Law § 35-b (5) provides:
 

 “(a) A screening panel shall be established in each judicial department consisting of four members, two of whom shall be appointed by the board of directors of the capital defender office and two of whom shall be appointed by the presiding justice of each judicial department. Each screening panel shall establish and periodically update a roster of attorneys qualified for appointment as lead counsel or associate counsel pursuant to the provisions of this section. The capital defender office, in consultation with the administrative board of the judicial conference, shall promulgate regulations to provide that qualified attorneys whose names appear on such rosters and who wish to be appointed to represent defendants in capital cases, are given fair opportunity to receive such appointments. Each screening panel shall also promulgate and periodically update, in consultation with the administrative board of the judicial conference, a schedule of fees to be paid attorneys pursuant to this section in each department, which schedule shall be subject to the approval of the court of appeals. Prior to approving fee schedules, the court shall invite the submission of written comments from interested parties. Fee schedules shall be promulgated and approved after reviewing the rates of compensation generally paid in the department to attorneys with substantial experience in the representation of defendants charged with murder or other serious felonies, and shall be adequate to ensure that qualified attorneys are available to represent defendants eligible to receive counsel pursuant to this section.
 

 “(b) Each appellate division, in consultation with the screening panel, shall establish the rates of fees and expenses to be paid for expert, investigative and other reasonably necessary services pursuant to this section.”
 

 [2]
 

 . The Administrative Board of Courts consists of the Chief Judge of the Court of Appeals and the four Appellate Division Presiding Justices (see, Judiciary Law § 210 [2]).
 

 [3]
 

 . Prior to granting leave to appeal, this Court denied a motion to disqualify Judges Smith, Levine, Ciparick and Wesley and dismissed the motion to disqualify Chief Judge Kaye as academic (95 NY2d 556).
 

 [4]
 

 . The Governor’s Memorandum, approving the enactment of the statute, states:
 

 “Similarly, the bill requires that the Court of Appeals approve the schedules of fees proposed by screening panels in each judicial department, in consultation with the Administrative Board, to be paid attorneys representing indigent defendants in capital cases” (Governor’s Mem approving L 1995, ch 1, 1995 NY Legis Arm, at 26).