[22 NYS3d 524]

Agencies for Children's Therapy Services, Inc., Respondent, v New York State Department of Health et al., Appellants.

Second Department, December 30, 2015

**APPEARANCES OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, New York City (*Steven C. Wu* and *Matthew W. Grieco* of counsel), for appellants.

*Jones Day*, New York City (*Todd R. Geremia* and *Allison L. Waks* of counsel), for respondent.

DICKERSON, J.

Introduction

In 1992, New York State established an early intervention program to provide assistance to developmentally disabled children from birth until three years of age (Public Health Law art 25). The early intervention program offers these young children a wide variety of services, including physical and occupational therapy, nursing care, speech pathology, and nutrition and social work services (*see* Public Health Law § 2541 [7]). These services are provided to families at no cost, regardless of income, through private agencies which contract with the New York State Department of Health (hereinafter the DOH). At issue on this appeal are two rules promulgated by the DOH that have an impact upon the private agencies which provide early intervention services, as well as other types of health care services, to New Yorkers. One rule places limits on the amount of administrative costs and executive compensation that may be paid by these agencies, and the other seeks to avoid potential conflicts of interest primarily by prohibiting the evaluator who determines a child's eligibility for early intervention services, and the agency which employs the evaluator, from providing services to that child. The plaintiff commenced this action seeking to invalidate the two rules on the ground that the DOH had exceeded its authority and violated the separation of powers doctrine by enacting them. For the reasons that follow, we conclude that the promulgation of these rules did not constitute improper policymaking in violation of the constitutional separation of powers doctrine.

Factual and Procedural Background

### Executive Order (Cuomo) No. 38 (9 NYCRR 8.38) and the Use-of-Funds Rule

On January 18, 2012, Governor Andrew Cuomo issued Executive Order (Cuomo) No. 38 (9 NYCRR 8.38) (hereinafter Executive Order No. 38), which directed executive state agencies that provide state financial assistance or state-authorized payments to private organizations which perform certain services for New Yorkers to promulgate regulations addressing those organizations' executive compensation and administrative costs.

In response, effective July 1, 2013, the DOH added part 1002 to 10 NYCRR, which part is entitled "Limits on Administrative

Expenses and Executive Compensation." According to the DOH, the underlying purpose of part 1002 (hereinafter the use-of-funds rule) is to ensure that the public funds the DOH administers are actually spent primarily on the provision of health care services rather than on overhead. Specifically, the use-of-funds rule requires certain "covered providers" to file an annual disclosure form with the DOH regarding their allocation of state funds (10 NYCRR 1002.5). The use-of-funds rule further provides that by 2015, no less than 85% of the covered operating expenses of covered providers which are paid for with state funds or state-authorized payments shall be for "program services expenses rather than administrative expenses" (10 NYCRR 1002.2 [a]).

The use-of-funds rule also generally prohibits covered providers from using state funds or state-authorized payments for executive compensation given directly or indirectly to a "covered executive" in an amount greater than $199,000 per annum (10 NYCRR 1002.3 [a]). The use-of-funds rule further provides that, where covered providers' executive compensation exceeds $199,000 per annum (including not only state funds and state-authorized payments but also any other source of funding), the covered provider will be subject to penalties if such compensation either (1) is greater than the 75th percentile of "that compensation provided to comparable executives in other providers of the same size and within the same program service sector and the same or comparable geographic area as established by a compensation survey identified, provided, or recognized by [the DOH] and the Director of the Division of the Budget"; or (2) was not reviewed and approved by the board of directors or equivalent governing body of the covered provider after taking into consideration "appropriate comparability data" (10 NYCRR 1002.3 [b]). However, the use-of-funds rule provides that the limit on executive compensation contained therein shall not be applied to limit reimbursement with state funds or state-authorized payments for "reasonable compensation paid to a covered executive for program services, including but not limited to supervisory services performed to facilitate the covered provider's program services, rendered by the executive outside of his or her managerial or policy-making duties" (10 NYCRR 1002.3 [c]).

A covered provider may obtain a waiver of the executive compensation and/or administrative expense limits contained in the use-of-funds rule upon a showing of "good cause," taking

into account various factors such as the extent to which the availability and quality of the program services it provides would be negatively affected without a waiver, and the nature, size, and complexity of the provider's operations (10 NYCRR 1002.4 [a], [b]). If a covered provider fails to comply with the use-of-funds rule and has not obtained a waiver, it is subject to the suspension, modification, or termination of its service contract or its license to deliver DOH program services or, where possible and consistent with federal and state laws, the redirection of state funds or state-authorized payments (*see* 10 NYCRR 1002.6 [a], [d]).

## The Conflict-of-Interest Rule

Meanwhile, effective January 1, 2013, the DOH adopted amendments to 10 NYCRR subpart 69-4 (hereinafter collectively the conflict-of-interest rule) to address potential conflicts of interest between evaluators, service coordinators, and service providers involved in the State's early intervention program (*see generally* Public Health Law § 2540 *et seq.*). According to the DOH, the conflict-of-interest rule is intended to ensure that the individual entrusted with the responsibility of determining a child's eligibility for the early intervention program and what services that child needs conducts an objective evaluation, and does not recommend inappropriate or unnecessary services. To this end, the conflict-of-interest rule generally prohibits the evaluator who determines a child's eligibility for the early intervention program, any agency that contracts with or employs the evaluator, and any relatives or business associates of the evaluator, from providing early intervention services to that child (*see* 10 NYCRR 69-4.11 [a] [7] [ii] [a]). However, the DOH may authorize the evaluator or the agency that contracts with or employs the evaluator to provide services if there are "special circumstances related to the evaluator's qualifications or availability or other extraordinary circumstances in which there is a clear showing that the child will not be able to access needed services absent such authorization" (10 NYCRR 69-4.11 [a] [7] [ii] [a]). The conflict-of-interest rule also prohibits a service coordinator from assigning as a service provider "a business associate of the service coordinator, a relative of such service coordinator or an agency provider which employs or contracts with such relative . . . unless such relationship is disclosed to the parent and the parent does not object to the assignment" (10 NYCRR 69-4.11 [a]

[7] [ii] [d]). The conflict-of-interest rule further prohibits an individual from being approved to serve as both an evaluator and a service coordinator within the early intervention program system (*see* 10 NYCRR 69-4.5 [a] [6]).

## This Action

The plaintiff is a not-for-profit corporation whose member agencies contract with and employ individuals who serve as evaluators, service coordinators, and service providers in the early intervention program. After the plaintiff commenced this action against the DOH and Governor Cuomo (hereinafter together the defendants) for declaratory relief, it moved for summary judgment declaring that Executive Order No. 38, the use-of-funds rule, and the conflict-of-interest rule are invalid and may not be enforced. In support of its motion, the plaintiff argued that the two rules constituted improper policymaking by the executive branch in violation of the separation of powers doctrine. The plaintiff further asserted that the legislature's failure to enact similar statutory provisions as part of the 2012 state budget evinced a legislative intent not to impose the conflict-of-interest rule on the early intervention program, and to reject placing limits on state reimbursement of service providers' executive compensation and administrative expenses. The defendants cross-moved for summary judgment declaring that the use-of-funds and conflict-of-interest rules are valid. The defendants maintained that both rules were within the scope of the DOH's regulatory authority to adopt, that the DOH had relied upon its special expertise in adopting the rules, and that the legislative history surrounding the 2012 budget process did not evince a legislative intent to reject the rules. The Supreme Court granted the plaintiff's motion and denied the defendants' cross motion, concluding that the DOH usurped the legislature's function in promulgating the use-of-funds and conflict-of-interest rules. The defendants appeal, and we reverse.

Analysis

## General Principles

"The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling

legislation" (*Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]; *see Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]; *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003]). "The constitutional principle of separation of powers . . . requires that the [l]egislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" (*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d 600, 609 [2015] [internal quotation marks omitted]; *see Pataki v New York State Assembly*, 4 NY3d 75, 107 [2004]; *Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 821-822 [2003]). "The branches of government cannot always be neatly divided, however, and common sense must be applied when reviewing a separation of powers challenge. As long as the legislature makes the basic policy choices, the legislation need not be detailed or precise as to the agency's role" (*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d at 609 [citation omitted]; *see Dorst v Pataki*, 90 NY2d 696, 699 [1997]; *Bourquin v Cuomo*, 85 NY2d 781, 784-785 [1995]). Where an agency has been endowed with broad power to regulate in the public interest, courts generally will uphold reasonable acts that further the regulatory scheme (*see Matter of New York State Assn. of Criminal Defense Lawyers v Kaye*, 96 NY2d 512, 518 [2001]; *Matter of City of New York v State of N.Y. Commn. on Cable Tel.*, 47 NY2d 89, 92 [1979]; *Matter of Independent Master Plumbers of Westchester County, Inc. v Westchester County Bd. of Plumbing Examiners*, 13 AD3d 374, 375 [2004]).

*Boreali v Axelrod* (71 NY2d 1 [1987]) is the seminal case addressing the proper delegation of power. In *Boreali*, the Court of Appeals "set out four 'coalescing circumstances' that are non-mandatory, somewhat-intertwined factors for courts to consider when determining whether an agency has crossed the hazy 'line between administrative rule-making and legislative policy-making' " (*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d at 610, quoting *Boreali v Axelrod*, 71 NY2d at 11). These factors are (1) "whether the agency did more than balanc[e] costs and benefits according to preexisting guidelines, but instead made value judgments entail[ing] difficult and complex choices between broad policy goals to resolve social problems"; (2) "whether the agency merely filled in details of a broad policy or if it wrote on a clean

slate, creating its own comprehensive set of rules without benefit of legislative guidance"; (3) "whether the legislature has unsuccessfully tried to reach agreement on the issue, which would indicate that the matter is a policy consideration for the elected body to resolve"; and (4) "whether the agency used special expertise or competence in the field to develop the challenged regulations" (*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d at 610-612 [internal quotation marks omitted]). The "central theme" of a *Boreali* analysis is that "an administrative agency exceeds its authority when it makes difficult choices between public policy ends, rather than find[ing] means to an end chosen by the legislature" (*Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*, 23 NY3d 681, 700 [2014]).

## Executive Order No. 38 and the Use-of-Funds Rule

The DOH is an agency in the executive branch of the New York State government, under the Governor. By legislative enactment, the Governor and the DOH were authorized to promulgate Executive Order No. 38 and the use-of-funds rule, respectively.

The legislature has endowed the DOH with broad power to regulate in the public interest (*see Matter of New York State Assn. of Criminal Defense Lawyers v Kaye*, 96 NY2d at 518; *Matter of City of New York v State of N.Y. Commn. on Cable Tel.*, 47 NY2d at 92; *Matter of Independent Master Plumbers of Westchester County, Inc. v Westchester County Bd. of Plumbing Examiners*, 13 AD3d at 375). Under the Public Health Law, the legislature authorized the DOH to "regulate the financial assistance granted by the state in connection with all public health activities" (Public Health Law § 201 [1] [*o*]), and to "receive and expend funds made available for public health purposes pursuant to law" (Public Health Law § 201 [1] [p]). The legislature further authorized the DOH to enter into contracts and agreements with individuals, associations, and corporations as may be deemed necessary and advisable to carry out the general intent and purposes of the Public Health Law, and provided that such contracts "may provide for payment by the state, within the limit of funds available, for materials, equipment or services" (Public Health Law § 206 [3]). Additionally, under the State Finance Law, when the DOH contracts with private entities to provide public health services,

it is statutorily required to "make a determination of responsibility of the proposed contractor" (State Finance Law § 163 [9] [f]), which includes an analysis of the proposed contractor's "financial ability," "integrity," and "past performance" (State Finance Law § 163 [1] [c]). Generally, the DOH is also statutorily required to make its service contract awards on the basis of "best value to a responsive and responsible offerer" (State Finance Law § 163 [4] [d]), in a manner that "optimizes quality, cost and efficiency" (State Finance Law § 163 [1] [j]).

Although none of these provisions expressly authorize the creation of the administrative cost and executive compensation limits contained in the use-of-funds rule, " '[a]n agency can adopt regulations that go beyond the text of [its enabling] legislation, provided they are not inconsistent with the statutory language or its underlying purposes' " (*Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn.*, 25 NY3d at 608, quoting *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d at 254; *see Goodwin v Perales*, 88 NY2d 383, 395 [1996]). Here, the administrative cost and executive compensation limits contained in the use-of-funds rule are not inconsistent with the above statutory provisions or their underlying purpose of obtaining high-quality services with limited available funds (*see Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 88 NY2d 56, 67 [1996]; *Matter of Medicon Diagnostic Labs. v Perales*, 74 NY2d 539, 545 [1989]). Indeed, the use-of-funds rule directly furthers the purposes of those statutory provisions by ensuring that the DOH awards service contracts to agencies that will use most of the tax dollars they receive directly on the provision of services rather than upon administrative overhead and executive compensation.

Moreover, the application of the factors set forth in *Boreali* does not indicate that the DOH usurped the legislature's function in promulgating the use-of-funds rule. With respect to the first factor, the DOH did not attempt to resolve a complex issue implicating broad political, social, and economic concerns beyond its purview or to act on its own idea of sound policy (*cf. Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*, 23 NY3d at 697-699; *Boreali v Axelrod*, 71 NY2d at 12). In addition, the DOH did not create a regulatory scheme "laden with exceptions based solely upon economic and social concerns"

and based "on its own conclusions about the appropriate balance of trade-offs between health and cost to particular industries in the private sector" (*Boreali v Axelrod*, 71 NY2d at 12; *see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene*, 23 NY3d at 697). While a covered provider may obtain a waiver of the executive compensation and administrative expense limits if it demonstrates "good cause," the factors used to determine whether such good cause exists concern the DOH's need to be able to attract contractors in the marketplace (10 NYCRR 1002.4 [a], [b]). In this manner, the waiver provisions further the DOH's purpose of ensuring the efficient provision of quality services with the limited funds it has to disburse.

With respect to the second *Boreali* factor, the DOH did not "wr[ite] on a clean slate, creating its own comprehensive set of rules" without legislative guidance (*Boreali v Axelrod*, 71 NY2d at 13). Instead, the above-quoted provisions of the Public Health Law and the State Finance Law charge the DOH with making decisions as to the providers it will engage to provide public health services on behalf of the State with the limited funds available to it, and on what terms, while ensuring that sufficient high-quality services are delivered to all New Yorkers. The DOH's determination to establish executive compensation and administrative cost limits in order to guide its own spending and contracting decisions represents a means to achieve the legislature's expressed ends (*see Matter of New York State Health Facilities Assn. v Axelrod*, 77 NY2d 340, 348 [1991]; *Matter of Adirondack Health-Uihlein Living Ctr. v Shah*, 125 AD3d 1366, 1368 [2015]).

With respect to the third *Boreali* factor, the DOH did not improperly intrude upon a subject of prolonged legislative deadlock. While legislation imposing executive compensation and administrative cost limits on service providers receiving significant public funds was proposed by the Governor and ultimately not adopted by the legislature in connection with the 2012 budget bill, and a similar bill was unsuccessfully introduced before the Assembly Ways and Means Committee on two occasions, this is not the type of extensive and repeated consideration that the Court of Appeals found significant in *Boreali* (*see Boreali v Axelrod*, 71 NY2d at 7, 13). "Legislative inaction, because of its inherent ambiguity, 'affords the most dubious foundation for drawing positive inferences' " (*Bourquin*

*v Cuomo*, 85 NY2d at 787-788 [citations omitted]). Accordingly, the legislature's failure to enact similar proposed legislation does not, under the circumstances here, warrant the conclusion that the DOH exceeded its authority in promulgating the use-of-funds rule (*see Bourquin v Cuomo*, 85 NY2d at 787-788; *Rent Stabilization Assn. of N.Y. City v Higgins*, 83 NY2d 156, 170 [1993]; *Matter of New York State Health Facilities Assn. v Axelrod*, 77 NY2d at 348 n 2; *Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv.*, 125 AD3d 105, 110-111 [2014]).

Finally, as to the fourth *Boreali* factor, the development of the use-of-funds rule resulted from the DOH's special expertise. Contrary to the plaintiff's contention, the DOH did not merely restate the provisions contained in the Governor's proposed legislation. Instead, the DOH's use-of-funds rule was vastly more detailed and tailored to the health sector. The rule clearly reflects that it is the product of the DOH's independent research into average levels of executive compensation and administrative expenses, its industry and program management expertise, and multiple revisions based on stakeholders' concerns.

Based on the foregoing, we conclude that the Governor and the DOH acted within their authority in promulgating Executive Order No. 38 and the use-of-funds rule, respectively.

## The Conflict-of-Interest Rule

■ The DOH also had the statutory authority to adopt the conflict-of-interest rule, and did not violate the separation of powers doctrine in promulgating it.

The legislature broadly authorized the DOH to "adopt regulations necessary to carry out" the statutory provisions relating to the early intervention program (Public Health Law § 2559-b). As the early intervention program's "[l]ead agency" (Public Health Law § 2541 [12]), the DOH is "responsible for the general administration and supervision" of the early intervention program and the "monitoring of programs and activities used by the state to carry [it] out" (Public Health Law § 2550 [1]). The legislature specifically charged the DOH with "establishing standards for evaluators, service coordinators and providers of early intervention services" (Public Health Law § 2550 [2] [a]), regulating the evaluation process (*see* Public Health Law § 2544 [3] [b]; [4] [d] [v]), and "approving, and periodically re-approving evaluators, service coordinators

and providers of early intervention services who meet [DOH] standards" (Public Health Law § 2550 [2] [b]). The legislature further empowered the DOH to condition its approval of evaluators, service coordinators, and service providers on their agreement to adhere to terms and conditions of participation in the early intervention program set forth by the DOH (*see id.*). Additionally, in 2003, the legislature specifically directed the DOH to collect data regarding, among other things, the "number of approved evaluators who also provide services to early intervention children they have evaluated," and to use the data it collected to "enhance the [DOH's] ongoing provision of program oversight and guidance" (Public Health Law former § 2557 [4] [f], [k] [repealed by L 2012, ch 56, § 1, part A, § 9-a, eff Apr. 1, 2013]). Taken together, these statutory provisions supply the DOH with ample authority to promulgate regulations intended to avoid conflicts of interest among the early intervention program professionals that the DOH is charged with supervising, monitoring, and approving (*see Matter of Sullivan Fin. Group, Inc. v Wrynn*, 94 AD3d 90, 94 [2012]).

The DOH's promulgation of the conflict-of-interest rule does not raise the concerns outlined by the Court of Appeals in *Boreali*. With respect to the first two *Boreali* factors, the DOH did not effectuate "a profound change in social and economic policy" (*Boreali v Axelrod*, 71 NY2d at 8 [internal quotation marks omitted]), or act without legislative guidance. Contrary to the plaintiff's contention, this is not a situation where the legislature had already taken such action as it deemed appropriate to address its articulated policy, leaving no room for further agency action on the issue (*cf. Matter of Campagna v Shaffer*, 73 NY2d 237, 243 [1989]; *Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 359 [1985]; *Ellicott Group, LLC v State of N.Y. Exec. Dept. Off. of Gen. Servs.*, 85 AD3d 48, 54 [2011]). While the legislature has mandated that the early intervention program evaluations shall be "objective" (Public Health Law § 2541 [9]), shall be made without regard to "the availability of services in the municipality or *who might provide such services*" (Public Health Law § 2544 [4] [c] [emphasis added]), and shall not include "a reference to any specific provider of early intervention services" (Public Health Law § 2544 [5]), there is no indication that the legislature intended by way of these provisions to comprehensively address the risk that an evaluator's self-interest in obtaining later work as a service provider might influence his

or her evaluation. To the contrary, the legislature's broad delegation of authority to the DOH to promulgate rules to carry out the statutory provisions relating to the early intervention program (*see* Public Health Law § 2559-b), and express direction to the DOH in 2003 to analyze the issue of early intervention program evaluators providing services to the children they have evaluated and to enhance its oversight and guidance based on its conclusions, reflects a legislative intent to rely on the DOH to devise the measures it chooses to address conflicts of interest in the program.

As to the third *Boreali* factor, the conflict-of-interest rule, like the use-of-funds rule, was not the subject of prolonged legislative deadlock. The Governor did propose legislation on the subject during the 2012 budget negotiations, and the proposed legislation was not ultimately adopted by the legislature. However, the Court of Appeals has cautioned against drawing any inferences based on legislative nonaction in similar circumstances (*see Bourquin v Cuomo*, 85 NY2d at 787-788; *Boreali v Axelrod*, 71 NY2d at 13; *Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd.*, 41 NY2d 84, 89-90 [1976]). Indeed, the legislature's nonaction is consistent with a preference to rely on the DOH's expertise and flexibility to address the issue (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d at 866).

As to the fourth *Boreali* factor, the record reflects that the DOH drew on its expertise as the lead agency responsible for supervising and administering the early intervention program in developing the conflict-of-interest rule.

Based on the foregoing, we conclude that the DOH acted within its authority in promulgating the conflict-of-interest rule.

### Remaining Contentions

The plaintiff's remaining contentions are without merit.

### Conclusion

For the foregoing reasons, the Supreme Court should have denied the plaintiff's motion for summary judgment declaring that Executive Order No. 38, the use-of-funds rule, and the conflict-of-interest rule are invalid and may not be enforced, and should have granted the defendants' cross motion for summary judgment declaring that the use-of-funds rule and the conflict-of-interest rule are valid. Since this is a declaratory judgment action, we must remit the matter to the Supreme

Court, Nassau County, for the entry of a judgment declaring that the use-of-funds and conflict-of-interest rules are valid (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962]).

Accordingly, the order is reversed, on the law, the plaintiff's motion for summary judgment declaring that Executive Order (Cuomo) No. 38 (9 NYCRR 8.38), 10 NYCRR part 1002, and certain amendments to 10 NYCRR subpart 69-4 are invalid and may not be enforced is denied, the defendants' cross motion for summary judgment declaring that 10 NYCRR part 1002 and the challenged amendments to 10 NYCRR subpart 69-4 are valid is granted, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that 10 NYCRR part 1002 and the challenged amendments to 10 NYCRR subpart 69-4 are valid.

Dillon, J.P., Roman and LaSalle, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the plaintiff's motion for summary judgment declaring that Executive Order (Cuomo) No. 38 (9 NYCRR 8.38), 10 NYCRR part 1002, and certain amendments to 10 NYCRR subpart 69-4 are invalid and may not be enforced is denied, the defendants' cross motion for summary judgment declaring that 10 NYCRR part 1002 and the challenged amendments to 10 NYCRR subpart 69-4 are valid is granted, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that 10 NYCRR part 1002 and the challenged amendments to 10 NYCRR subpart 69-4 are valid.