Matter of Long Is. Pure Water, Ltd. v New York State Dept. of Health (2022 NY Slip Op 05902)

Matter of Long Is. Pure Water, Ltd. v New York State Dept. of Health

2022 NY Slip Op 05902

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

533705
[*1]In the Matter of Long Island Pure Water, Ltd., Appellant,
v
New York State Department of Health et al., Respondents.

Calendar Date:September 12, 2022

Before:Egan Jr., J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Rigano LLC, Melville (Nicholas C. Rigano of counsel), for appellant.
Letitia James, Attorney General, New York City (Philip Bein of counsel), for respondents.
American Chemistry Council, Washington, DC (Daniel M. Krainin of Beveridge & Diamond PC, New York City, of counsel), for American Chemistry Council, amicus curiae.

Ceresia, J.
Appeal from a judgment of the Supreme Court (Christina L. Ryba, J.), entered July 1, 2021 in Albany County, which, in a proceeding pursuant to CPLR article 78, dismissed the petition.
"Industry and modern technology have created thousands of new chemicals that would not otherwise exist in nature. Although some of these chemicals have proven benefits, the effect of many such chemicals on human health is unknown or not fully understood" (Public Health Law § 1112 [1]). Where these chemicals, known as emerging contaminants, pose a potential hazard to human health and are found to have entered public water supplies, respondents are empowered under state law to protect the public health by, among other things, adopting a maximum contaminant level for any such chemical (see Public Health Law § 1112 [3] [e]). At issue here is respondents' determination in 2020 to adopt a maximum contaminant level of 1.0 part per billion for the chemical 1,4-dioxane (hereinafter the MCL rule). This chemical is a synthetic industrial compound used in the manufacture of a wide range of consumer goods.[FN1]
Petitioner, a not-for-profit organization whose members are Long Island residents committed to securing pure drinking water for their communities, commenced the instant proceeding to challenge the MCL rule, asserting that respondents violated several provisions of the State Administrative Procedure Act. The essence of petitioner's claim is that, by enacting the MCL rule, respondents are forcing petitioner's members to shoulder the high cost of remediating Long Island's public water supply to achieve this maximum contaminant level in exchange for a minimal-to-nonexistent health benefit, while other contaminants in the water are being ignored. Following commencement, respondents joined issue and raised several objections in point of law, including lack of standing. Supreme Court, agreeing that petitioner lacked standing, dismissed the petition. Petitioner appeals, and we affirm.
"Standing is a threshold determination and a litigant must establish standing in order to seek judicial review, with the burden of establishing standing being on the party seeking review" (Matter of 61 Crown St., LLC v New York State Off. of Parks, Recreation & Historic Preserv., 207 AD3d 837, 839 [3d Dept 2022] [internal quotation marks and citations omitted]). Accordingly, "[a] petitioner challenging governmental action must show injury in fact, meaning that the petitioner will actually be harmed by the challenged governmental action, and, further, that the injury falls within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the governmental entity has acted" (Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v City of Schenectady, 178 AD3d 1329, 1331 [3d Dept 2019] [internal quotation marks, brackets and citation omitted]; see Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 50 [2019]). "For an organization[*2][such as petitioner] to have standing, it must establish that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v City of Schenectady, 178 AD3d at 1331 [internal quotation marks and citations omitted]; see Matter of New York Propane Gas Assn. v New York State Dept. of State, 17 AD3d 915, 916 [3d Dept 2005]).
Petitioner claims that its members have sustained two distinct injuries as a result of respondents' adoption of the MCL rule. First, petitioner contends that its members are suffering economic harm due to the high cost of installing the specialized equipment required to reduce the level of 1,4-dioxane to 1.0 part per billion, leading to increases in their water rates. While there appears to be no real dispute that this alleged economic injury constitutes an injury in fact, increased water supply rates do not fall within the zone of interests sought to be protected by the relevant sections of the Public Health Law under which the MCL rule was promulgated (see Public Health Law §§ 225, 1112, 1113). These statutes, taken together, "empower[] [respondents] to make rules and regulations for the protection of all public supplies of potable waters which constitute a part of the source of [the state]'s water supply" (City of New York v Mancini-Ciolo, Inc., 188 AD2d 633, 634 [2d Dept 1992]). Nothing in the statutory scheme contemplates an objective of preventing increased public drinking water costs (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 777 [1991]; Matter of New York Propane Gas Assn. v New York State Dept. of State, 17 AD3d at 918; Matter of New York State Assn. of Criminal Defense Lawyers v Kaye, 269 AD2d 14, 17 [3d Dept 2000], affd 96 NY2d 512 [2001]). The fact that a cost-benefit analysis is, as a general rule, an important part of any regulatory process (see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 23 NY3d 681, 697 [2014]) does not, as petitioner claims, mean that economic costs are within the zone of interests sought to be protected by the enabling legislation itself. That is, "[w]hile it is true that many regulatory decisions involve weighing economic and social concerns against the specific values that the regulatory agency is mandated to promote, the agency in this case has not been authorized to structure its decision making in a cost-benefit model and, in fact, has not been given any legislative guidelines at all for determining how the competing concerns of public health and economic cost are to be weighed" (Boreali v Axelrod, 71 NY2d 1, 12 [1987] [internal quotation marks and citation omitted]).
Second, petitioner argues that its members will continue to be exposed to other contaminants even after remediation of [*3]1,4-dioxane to 1.0 part per billion — both in the form of toxic byproducts of the remediation process, as well as other contaminants that are not filtered out by the process. However, with regard to the allegation that the remediation technology will generate toxic byproducts, such claim is based upon conjecture and is devoid of evidentiary support (see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 214 [2004]; Matter of Developmental Disabilities Inst., Inc. v New York State Off. for People with Dev. Disabilities, 200 AD3d 1273, 1275 [3d Dept 2021]). Indeed, the petition speculates that there are "potential byproducts," that said byproducts are "not well understood" and that "there could be unintended consequences without additional study." In any event, petitioner failed to rebut respondent's showing that, even if any contaminants result from the treatment of 1,4-dioxane, they can be removed from the water by conventional methods such as carbon filtration before the water is supplied to customers. As for the claim that petitioner's members will continue to be exposed to contaminants other than 1,4-dioxane that are currently present in the public water supply, any such exposure would occur even in the absence of the MCL rule and therefore was not occasioned by the implementation thereof.
In light of the foregoing, petitioner has failed to meet its burden of demonstrating standing by showing that it has suffered an injury in fact that falls within the zone of interests sought to be protected by the relevant statutes. As such, petitioner's remaining contentions have been rendered academic.
Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: The MCL rule also established a maximum contaminant level for two other contaminants, commonly known as PFOA and PFOS, which petitioner affirmatively does not challenge.