OPINION OF THE COURT
John J. Ark, J.
On December 31, 2010, in anticipation of his resignation as Mayor of the City of Rochester to become Lieutenant Governor of New York, Mayor Robert J. Duffy appointed Corporation Counsel Thomas S. Richards Deputy Mayor.[1] With the resignation of Mayor Duffy on December 31, 2010, Mr. Richards assumed the title of Mayor, and was sworn in as such. The scope of his authority was to “act as Mayor until the vacancy is filled.”
On January 1, 2011, Acting Mayor Richards updated the mayoral succession plan (the Succession Plan Update), which, pursuant to Public Officers Law § 9, designated in what order his subordinate officers were to succeed him “in case of his absence from the office or his inability to act, or in case of a vacancy in the office.” The only change Acting Mayor Richards made to former Mayor William Johnson’s order of succession which is relevant here is the change of title from Commissioner of Community Development to the Commissioner of Neighborhood and Business Development. Since Acting Mayor Richards had not appointed a Deputy Mayor, that office was not contained in his order of succession. On January 20, 2011, Acting Mayor Richards resigned. Through the order of succession implemented by Acting Mayor Richards, the Commissioner of Neighborhood *730 and Business Development, R. Carlos Carballada, serves as de facto Mayor by exercising the powers and duties of the Mayor’s office.
Concurrent with Mr. Carballada’s succession, filling a vacancy in the office of Mayor by appointment and election is controlled by section 3-2.1 of the Charter of the City of Rochester:
“The Council shall fill a vacancy in the office of Mayor arising otherwise than by expiration of term by appointing by a majority vote a person who is registered in the same political party as the person who vacated the office . . . The person so appointed Mayor holds office until the first day of January succeeding the first annual election held in time to permit the filing of nominating petitions following the vacancy, at which a successor must be elected for the unexpired term. If the Council fails to appoint a Mayor within 30 days of a vacancy in the office of Mayor, there shall be a special election held within 90 days of such vacancy to elect a successor to serve the unexpired term.”
City Council’s efforts to fill the mayoral vacancy arising from Mayor Duffy’s resignation began as soon as Council learned that Mayor Duffy was to run for Lieutenant Governor. City Council knew that the City Charter mandated that the appointee be “a person who is registered in the same political party as the person who vacated the office.” Because Mayor Duffy was a Democrat, members of City Council discussed possible Democratic nominees in caucus, as permitted by Public Officers Law § 108. Additionally, on November 15, 2010, City Council held a public hearing to discuss the appropriate course of action should a mayoral vacancy arise. Over 50 people spoke at that meeting and public opinion was sharply divided.
City Council continued discussing possible appointees, but was unable to come to an agreement in light of the various challenges facing the City of Rochester. As such, City Council concluded that, under the City Charter, it was mandated to put the issue before the voters, who will select a Mayor at a special election. In accordance with the requirements set forth by the Board of Elections, City Council passed Resolution No. 2011-2[2] on January 25, 2011, setting March 29, 2011 as the date for the special election. City Council’s effort to make a mayoral appointment ultimately failed to do so.
*731 Petitioner Harry Davis is a registered voter, residing at 266 Hamilton Street in the City of Rochester, and is a candidate for the office of Mayor of the City of Rochester. On February 4, 2011, in a case similar to this, New York State Supreme Court Justice David Michael Barry decided only the issue of standing. While the parties have argued the issue of standing here,[3] this court assumes, without deciding, that Mr. Davis has standing and therefore addresses the merits of his petition (see Skelos v Paterson, 13 NY3d 141 [2009]; Matter of New York State Assn. of Criminal Defense Lawyers v Kaye, 96 NY2d 512 [2001]; People v Alvaranga, 84 NY2d 985, 986 [1994]; People v Lindsay, 72 NY2d 843, 845 [1988]; Babigian v Wachtler, 69 NY2d 1012, 1013 [1987]; Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 NY2d 948, 951 [1985]).
*732 Petitioner’s Claims
Petitioner’s “First Claim” (asserted as a CPLR article 78 claim) and “Second Claim” (asserted, in the alternative, as a declaratory judgment claim) challenge the authority of respondent R. Carlos Carballada to exercise the powers and duties of the Mayor’s office. Petitioner alleges that neither the assumption of powers and duties of the Mayor set forth in chapter 7 of the Municipal Code of the City of Rochester (“Continuity of Government”) nor the “Order of Succession” listed in the City’s “Comprehensive Emergency Preparedness Plan” were lawfully triggered by the vacancy in the office of Mayor created by the January 20, 2011 resignation of Acting Mayor Richards.
Respondents counter that the first and second claims must be dismissed because Mr. Carballada validly succeeded to the position of Acting Mayor under chapter 7 of the Municipal Code, the Rochester Comprehensive Emergency Preparedness Plan, the updated mayoral succession plan enacted on January 1, 2011, and Public Officers Law § 9.
Petitioner’s “Third Claim” contends that respondent City Council violated its obligation under section 3-2.1 of the City Charter (“Vacancy in the office of Mayor”) by failing to appoint a person to fill the vacancy in the office of Mayor resulting from the December 31, 2010 resignation of Mayor Duffy and the January 20, 2011 resignation of Acting Mayor Richards. Petitioner maintains that section 3-2.1 does not authorize the City Council to disregard its obligation to appoint a Mayor and to treat the scheduling of a special election as an optional method for filling the vacancy.
Respondents argue petitioner’s third cause of action rests on the assumption that the City Council must appoint a Mayor instead of filling the mayoral vacancy by special election. Respondents reject this assumption, but even if it were true, that claim is now moot.
Petitioner’s “Fourth Claim” asks the court to nullify respondent City Council’s January 25, 2011 adoption of a resolution scheduling the March 29, 2011 special election for the office of Mayor, contending that the last sentence of section 3-2.1 of the City Charter regarding a special election is only triggered following the lapse of 30 days from the date the vacancy is created if and when the City Council fails, after attempting to appoint a person to the vacancy, to attain the necessary majority vote.
Respondents counter that petitioner’s fourth cause of action must be dismissed because the City Council fulfilled any obligation it had under the City Charter to consider the appointment *733 of a Mayor, and as a result, it had the authority to schedule a special election on January 25, 2011.
On February 22, 2011, petitioner amended his petition requesting that respondent City Council’s February 22, 2011 “Resolution Regarding The Vacancy In The Office Of Mayor,” which in part carried out suggestions made by this court on February 16, 2011, be annulled and set aside.
Mayoral Succession
The core of the petition is to have the Mayor elected at the general election on November 8, 2011 instead of at a now scheduled special election on March 29, 2011. In a November general election, the petitioner would have opportunities to both obtain designating petitions and contest in a primary election. In order to accomplish this change, the petitioner, in part, attacks the process by which Mr. Carballada is exercising the powers and duties of the office of Mayor.
Through the clarity of hindsight, the issue of mayoral succession would not be before this court had either Acting Mayor Richards, before his resignation, appointed a Deputy Mayor[4] or the City Council filled the mayoral vacancy by appointing a person by a majority vote within 30 days of the vacancy.[5] Since neither of these processes were invoked, Mr. Carballada succeeded “to the powers and duties, but not the office,” of Mayor under chapter 7 of the Municipal Code, the Rochester Comprehensive Emergency Preparedness Plan, the updated mayoral succession plan enacted on January 1, 2011, and Public Officers Law § 9. This use of chapter 7 is certainly less direct than a specific appointment and is extraordinarily convoluted, but it is not ineffective.[6]
However, hindsight does not make clear how questioning Mr. Carballada’s authority affects the scheduling of a special elee *734 tion. Indeed, particularly in the context of the City Council’s continuing failure to fill the vacancy by appointment, the claimed uncertainty of Mr. Carballada’s authority argues for an election sooner, rather than later (i.e., on March 29, 2011 rather than later on November 8, 2011).
Mayoral Election
Petitioner then posits that “[i]n light of the above, the City Charter’s mayoral vacancy provision should be construed as mandating the appointment of a person to fill the current mayoral vacancy, thereby assuring that Rochester’s Mayor is elected at a general election.”* *[7] The court agrees with petitioner that City Charter § 3-2.1 mandates City Council fill a vacancy in the office of Mayor by appointing by a majority vote. City Council has failed to do so. However, the section 3-2.1 requirement of a majority vote of the Council makes a court-mandated remedy impossible. As a legislative body cannot mandate how a court should decide a matter, a court cannot order a legislative body how to vote.[8] A court can vacate an unlawful legislative action, but a court cannot vacate a legislative inaction. City Council’s failure to appoint by a majority vote was a legislative inaction.
In the final analysis, petitioner’s interpretation of City Charter § 3-2.1 disregards the import of the last sentence of section 3-2.1: “If the Council fails to appoint a Mayor within 30 days of a vacancy in the office of Mayor, there shall be a special election held within 90 days of such vacancy to elect a successor to serve the unexpired term.” The petition alleges that the City Council improperly decided to hold a special election to fill Rochester’s mayoral vacancy rather than appoint someone to *735 fill the position. However, the City Charter contemplates the Council failing to appoint a Mayor, which occurred here, and then mandates the holding of a special election within 90 days, which is scheduled for March 29, 2011. In essence, section 3-2.1 anticipates the Council’s failure and then provides a partial remedy for that failure.
The court finds and determines as follows:
1. that the failure of the City Council to appoint a Mayor within 30 days of a vacancy in the office of Mayor mandates that a special election be held within 90 days;
2. that the City Council has the continuing authority to fill the vacancy in the office of Mayor by appointing by a majority vote a person who is a registered Democrat;
3. that Mr. Carballada’s succession “to the powers and duties, but not the office,” of Mayor under chapter 7 of the Municipal Code, the Rochester Comprehensive Emergency Preparedness Plan, the updated mayoral succession plan enacted on January 1, 2011, and Public Officers Law § 9 is lawful; and
4. that vacating Mr. Carballada’s succession would have no affect on the City Charter § 3-2.1 requirement of a special election, but would leave the City without mayoral authority.
Accordingly, the respondents/defendants ’ motion to dismiss the amended verified petition/complaint is granted and the amended verified petition/complaint is hereby dismissed.

. “Deputy Mayor. There shall be a Deputy Mayor who shall be appointed by and serve at the pleasure of the Mayor without confirmation by the Council. The Mayor’s functions, powers and duties shall be exercised by the Deputy Mayor under the direction and control of the Mayor. ... In the event that the office of the Mayor becomes vacant, the Deputy Mayor shall act as the Mayor until the vacancy is filled as provided in this Charter.” (Charter of City of Rochester § 3-2.)

. Per the court’s February 16, 2011 suggestion, City Council, by the adoption of Resolution No. 2011-4 on February 22, 2011, amended this resolution.

. Petitioner bases his claim to standing on the following facts:
A. If, as mandated by the City Charter, the City Council were to appoint a person to the vacant position of Mayor, an election to fill the unexpired term would be held at the time of the general election in November 2011. Instead, the special election called for by respondent City Council in its January 25, 2011 resolution will be held on March 29, 2011, more than seven months earlier, significantly harming petitioner Davis by greatly reducing the time available for him to gain name recognition and to campaign throughout the City of Rochester.
B. As a result of the truncated period of time between the January 25, 2011 resolution calling for a special election, and the March 29, 2011 election date, petitioner would only have two weeks, from February 1 through February 14, 2011, to collect 1,500 signatures on petitions to be on the ballot for the March 29 special election. In sharp contrast, if the City Charter were complied with and the election for Mayor were conducted in November 2011, petitioner would have six weeks to collect 1,500 valid signatures, greatly enhancing the likelihood that he would attain the requisite amount to be on the ballot.
C. Petitioner is especially harmed by the timing of the election season, and the concentration of activities during the winter months, due to his physical condition. Half of both of petitioner’s feet have been amputated, making walking in winter conditions, and standing for prolonged periods, extremely difficult and painful. If respondent City Council complied with section 3-2.1 of the City Charter, the collection of signatures and the canvassing of neighborhoods would take place during the summer months and early fall when Rochester enjoys pleasant weather.
Respondents claim the petitioner lacks standing as to all causes of action. As to the first and second claims, petitioner alleges nothing to demonstrate how he has been injured by Mr. Carballada’s succession to the position of Acting Mayor (similar to the petitioners in the prior lawsuit before Justice Barry). Nor can petitioner establish standing for his third and fourth claims. Petitioner failed to sustain an “injury in fact” and none of his alleged injuries fall within the “zone of interests” protected by City Charter § 3-2.1. Petitioner also lacks both common-law taxpayer standing and voter standing.

. “Deputy Mayor. There shall be a Deputy Mayor who shall be appointed by and serve at the pleasure of the Mayor without confirmation by the Council.” (City Charter § 3-2.) Per paragraph 8 of the February 14, 2011 affidavit of Jeffrey Eichner, Acting Corporation Counsel of the City of Rochester: “Mr. Richards decided not to appoint a Deputy Mayor due to the short time period that he expected to perform the powers and duties, and his desire not to cause others to have to move from job to job.”

. Regardless of which date (December 31, 2010 for Mayor Duffy or January 20, 2011 for Mayor Richards), the Council has failed to appoint a mayor within 30 days of a vacancy in the office of Mayor.

. Like the Emergency Plan, the Succession Plan Update specifically states that it is to apply for all purposes, not just emergencies, thereby properly *734 exercising the authority of the Mayor. (See affidavit of Thomas S. Richards, Feb. 13, 2011.)

. Petitioner’s memorandum of law in opposition to motion to dismiss/ support of petition at 22.

. As set forth in Matter of Montano v County Legislature of County of Suffolk (70 AD3d 203, 210 [2d Dept 2009]):
“ ‘[I]t is a fundamental principle of the organic law that each department of government should be free from interference, in the lawful discharge of duties expressly conferred, by either of the other branches.’ ‘In this regard, “it is not the province of the courts to direct the legislature how to do its work.” ’ ‘[Separation of powers principles generally preclude courts from “intruding] upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches” ’ ” (citations omitted).