| |
|---|
| **City of Schenectady v City Council of the City of Schenectady** |
| 2026 NY Slip Op 30170(U) |
| February 2, 2026 |
| Supreme Court, Schenectady County |
| Docket Number: Index No. 2026-166 |
| Judge: Michael R. Cuevas |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SCHENECTADY

_____

CITY OF SCHENECTADY and GARY R.
MCCARTHY, in his official capacity as,
Mayor of the City of Schenectady,

                                        Plaintiffs,

        -against-

CITY COUNCIL OF THE CITY OF SCHENECTADY,
SAMANTA MYKOO, in her official capacity as City
Clerk of the City of Schenectady; MARION
PORTERFIELD, in her official capacity as President
Of the Schenectady City Council, JOHN MOOTOOVERN,
CARL WILLIAMS, DOMANI FARLEY, DOREEN DITORO,
And CARMEL PATRICK, in their official capacities as
Members of the Schenectady City Council, and KIM
WIGGINS, as member of the Schenectady City Council,
And JUSTIN CHAIRES,

                                        Defendants.

_____

DECISION AND ORDER
Application for a TRO

Index No. 2026-166

Assigned Justice:
Michael R. Cuevas, JSC

Plaintiffs commenced this action for a declaratory judgment by filing a Summons and Complaint on January 23, 2026.[1] Plaintiffs seek a judgment declaring that the December 18, 2025 appointment of defendant Justin Chaires to a vacant seat on the Schenectady City Council is void and without legal effect.[2]

_____

[1] Plaintiffs' initial RJI (NYSCEF Doc. No. 20) incorrectly identified this action as a special proceeding pursuant to CPLR Article 78. Plaintiffs' "corrected" RJI similarly misidentified the nature of the action.

[2] On December 22, 2025, Plaintiff City of Schenectady commenced a special proceeding pursuant to Article 78 of the Civil Practice Law and Rules (City of Schenectady v. City Council of the City of Schenectady, et al. Index No. 2025-3138). With the filing of that proceeding, Petitioner sought, and was granted, an *ex parte* Emergency Temporary Restraining Order until respondents could be heard on whether the TRO should continue. This Court heard the parties, the following day. Respondents' counsel, having been retained that morning, was unable to submit papers in opposition to the TRO application and requested time to submit an Answer and memorandum of law. The Court directed that respondents' papers be filed by January 13, 2026, and continued the TRO until the return date on the Petition, January 21, 2026. On January 13, 2026, respondents' new counsel, joined by Petitioner's new counsel requested a conference to set a revised schedule. At the conference on January 20, 2026, Petitioner's counsel advised that they would be filing the instant action for a declaratory judgment, with an application for a TRO. Counsel agreed that the Article 78 proceeding and the TRO granted therein would remain in effect until a determination on the new application for a TRO in the declaratory judgment action. Counsel agreed to an expedited schedule for the consideration of the new TRO application.

1

[* 1]

Plaintiffs' application for a TRO is supported by the affirmation of plaintiff Gary R. McCarthy ("McCarthy" or "Mayor") and several exhibits thereto and incorporated therein (Exhibits "A" through "O"). Plaintiffs also submitted a memorandum of law. Defendants' opposition to the application, submitted on the return date as permitted by the expedited schedule, consists of affirmations of defendants former City Council President Marion Porterfield ("Porterfield"), City Council member Carl Williams ("Williams"), and Schenectady City Clerk Samanta Mykoo ("Mykoo") and various exhibits.[3] Defendants also submitted a memorandum of law. After argument on the application for the TRO, Plaintiffs requested, and the Court granted, Plaintiffs an opportunity to submit a reply memorandum of law.

## BACKGROUND FACTS

The essential facts are not significantly in dispute. As a result of the resignation of City Council member Joseph Mancini on August 25, 2025, a vacancy was created in the office of Member of the Schenectady City Council. *McCarthy Ex. I.* By a notice dated December 15, 2025, the Schenectady City Council scheduled a Special Meeting for December 18, 2025, for the stated purpose: "[T]o Approve the 2026 Operating and Capital Budgets & Discussion and Vote to Fill the City Council Vacancy". *McCarthy Ex. J.* The City Council meeting agenda listed the same two items for "Original Consideration". *McCarthy Ex. K.* At the December 18, 2025 meeting, five members of the City Council were present: Council President Porterfield and Councilmembers John Mootooveren ("Mootooveren"), Williams, Damonni Farley ("Farley"), and Doreen Ditoro ("Ditoro"). Councilmember Carmel Patrick was not present at the meeting. *McCarthy Aff. ¶9, Porterfield Aff. ¶31.* A motion was made to consider and discuss candidates to fill the vacant City Councilmember position. A motion was made and seconded to open the discussion. *Porterfield Aff. ¶33.* The Mayor and the Corporation Counsel interjected that the proposed resolution did not contain the name of the individual to be appointed.

---

[3] Both parties chose to use alphabetical designations on their exhibits and defendants' exhibits attached to Porterfield's affirmation are "A" – "C" and those attached to Williams' affirmation are "A"-"B". Therefore the Court will refer to the exhibits by the affirmant's name and the letter designation.

[* 2]

*Porterfield Aff. ¶34, 36. McCarthy Aff. ¶11.* The City Council members discussed potential candidates. The Mayor, the Corporation Counsel and an Assistant Corporation Counsel offered unsolicited comments regarding past practice in making appointments and that the Council must act by resolution or ordinances subject to approval by the Mayor. *Porterfield Aff. ¶¶36-40, McCarthy Aff. ¶¶10,11.* Councilmember Williams moved, and Councilmember Mootooveren seconded a motion or resolution to appoint Justin Chaires to the vacant City Council seat. *Porterfield Aff. ¶43. McCarthy Aff. ¶¶12, 13.* A roll call vote was taken resulting in four votes in favor and one opposed. *Porterfield Aff. ¶43. McCarthy Aff. ¶13.* Following the Council's vote, the Mayor delivered a written veto to Porterfield. *Porterfield Aff. ¶45. McCarthy Aff. ¶14.* The veto letter is in the record as *McCarthy Ex. M.* After the December 18, 2025 meeting, Justin Chaires was administered the oath of office by the City Clerk. *Porterfield Aff. ¶48, 36. McCarthy Aff. ¶15.* The City administration refused to complete Chaires' onboarding process or to recognize Chaires as the appointed member of the City Council. The City Council has been unable to elect a Council President or City Clerk or to conduct Council business since as all votes result in a 3 -2 split where a minimum four votes in the affirmative are required for any counsel action.

## CONTENTIONS OF THE PARTIES

1. A. Plaintiffs contend that it is a longstanding practice of the City Council to fill vacancies and make appointments by formal resolution and that all resolutions are subject to veto by the Mayor pursuant to City Code Chapter 28. Porterfield asserts that the Mayor makes certain municipal appointments without the approval of the City Council and that other Mayoral appointments are subject to Council approval. Porterfield also asserts that the City Council is empowered by the City Code to make certain appointments and that those Code sections do not contain any language that Mayoral approval is necessary. Porterfield also counters that, in her experience, no appointment made by vote of the City Council has ever been vetoed.

3

[* 3]

1. B. Porterfield argues that to hold that the Mayor can veto the Council's appointment to the vacant seat would mean that the Mayor is empowered to veto the City Council's appointment of a City Clerk, of a Council President or a Committee Chair. Plaintiffs do not address this specific argument but maintain that all City Council action effected by resolution is subject to veto by the Mayor.

2. A. Plaintiffs contend that the document utilized by the City Council was not prepared by or approved by the Corporation Council contrary to the City Code.

3. B. Porterfield counters that that not all resolutions are drafted by the Corporation Counsel as other departments may do their own, and that she merely added detail to the "very spare and short blank appointment form an Assistant Corporation Counsel provided to the City Clerk.

4. A. Plaintiffs contend that the Mayor vetoed the resolution, appointment or motion of Justin Chaires and that the City Council's recourse is to attempt to override the veto or to allow it to stand.

   4. B. Defendants contend that the veto was not delivered to the City Clerk as required, that the basis for the veto was pretextual and that the Mayor cannot override the adopted budget which funded all seven council positions.

   5. B. Defendants contend that the Second-Class Cities Law and case law support the validity of the appointment by a voice vote upon a roll call of the Councilmembers where the City Charter is silent on the method of appointment.

5. A. Plaintiffs do not specifically address this argument.

6. A. On oral argument, Plaintiffs argued violations of Roberts Rules as a basis for invalidating the appointment. However, Plaintiffs make only brief mention of the alleged rule violation without citation to the specific rule.

## LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

The Court of Appeals has had occasion to restate the rules applicable to applications for preliminary injunctions, stating:

[* 4]

> The decision to grant or deny provisional relief, which requires the court to weigh a variety of factors, is a matter ordinarily committed to the sound discretion of the lower courts. Our power to review such decisions is thus limited to determining whether the lower courts' discretionary powers were exceeded or, as a matter of law, abused (*Doe v Axelrod*, 73 NY2d 748, 750 [1988]). The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor (*see* CPLR 6301; *see generally Doe*, 73 NY2d at 750).

*Nobu Next Door, LLC v. Fine Arts Hous., Inc.*, 4 N.Y.3d 839, 840 (2005)

Since the Court of Appeals' decision in *Nobu*, the Appellate Division, Third Department has reaffirmed the basic principles stated in *Nobu*. "[T]he decision to grant or deny a request for a preliminary injunction is committed to the sound discretion of the trial court". *Biles v. Whisher*, 160 A.D.3d 1159, 1160, (3d Dept. 2018). To guide the court in the exercise of its discretion, CPLR 6301 offers a familiar tripartite test: the party seeking a preliminary injunction must demonstrate (1) a probability of success on the merits (the merits prong), (2) a danger of irreparable injury in the absence of an injunction (the irreparable injury prong) and (3) a balance of equities in its favor (the equity prong). *Camp Bearberry, LLC v. Khanna*, 212 A.D.3d 897, 898, (3d Dept. 2023).

I.     *Likelihood of success of the merits*.

As to the first prong, the fact that certain arguments made in favor of the appointment have gone unanswered leads this Court to conclude that Plaintiffs have not demonstrated a reasonable likelihood of success. In 1934, the City of Schenectady adopted the simplified form of government designated as plan C under the Optional City Government Law. L.1914, Ch.444, Unconsol. Laws, §585 et seq. That plan established a city council of six members and a mayor, with a city manager appointed by the council. The City's form of government was revised by Local Law No.4 of 1978 to establish a city council "composed of seven Councilmen to be elected at large, one of which shall be designated by said body as President of the City Council at each organizational meeting." Schenectady City Charter §C13-3 C. Charter § 13-3 I. states:

5

[* 5]

Every ordinance or resolution of the City Council shall be presented to the elected Mayor with executive powers before it shall be of any force or effect. If he approves it, he shall sign it, but if he disapproves, he shall return it with his objections to the City Clerk who shall lay if before the Council at its next meeting. The Council shall enter the objections upon its journal and proceed to consider the ordinance or resolution so disapproved. If upon such reconsideration one more council vote beyond that normally required to approve an ordinance or resolution shall vote in favor of such ordinance or resolution, the same shall become of force. If any ordinance or resolution is not returned by the Mayor disapproved by him within 10 days after its presentation to him, it shall be of force. The Mayor shall hod a public hearing no less than three days after adoption of a local law.

However, Schenectady City Charter §13-2 E. specifically addresses vacancies by stating:

If, under Plan A, B, C, D, E or F, a vacancy exists or occurs in the Office of Mayor or Councilman, the Council shall appoint a qualified person to fill such vacancy until the first day of January following the next general city election, at which a successor shall be elected for the full unexpired term.

It is undisputed that the intent of this section is to give the City Council the power to appoint a qualified person when a vacancy in the office of member of the City Council arises. This section does not describe the manner by which the Council must act, nor does it provide for a veto of the Council's appointment by the Mayor. If this Court were to construe the language literally and without extending it by construction beyond its express terms, Defendants would be more likely to prevail than Plaintiffs. See, *McKinney's Statutes §94*. In addition, while many sections of the City Charter were revised by the Local Law No.4 of 1978, §C13-2E was left unchanged. The Court must presume that keeping the section as it existed was intentional. It is further worth noting that the section also covers the instance of a vacancy in the office of Mayor. If such a vacancy were to occur, there would be no one with authority to veto an appointment resolution. See, City Charter §13-3 G regarding limitation of the powers of an "Acting" Mayor. That provision can be read to support the position that no veto of a City Council appointment to the office of Councilmember or Mayor was intended.

6

[* 6]

The cases that address the power of appointment hold that the language of the municipal charter controls. *Dworsky v. Farano,* 41 NY2d 780 (1977) (City Council validly possesses the authority, by virtue of the city charter, to fill a vacancy in its own number; only in the event of deadlock does emergency provision become operative.); *Resnick v, County of Ulster,* 44 NY2d 279 (1978) (County legislators in non-charter counties can enact local laws to provide vacancy in office of county legislator to be filled by remaining membership); *Nuckel v. City of Yonkers,* 133 AD2d 226 (2d Dept 1987) (Mayor's authority to fill a vacancy in the office of Councilmember without the advice and consent of the Yonkers City Council provided for by the Yonkers City Charter); *Davis v. Carballada,* 31 Misc.3d 728 (Sup. Ct., Monroe Cty., 2011) (City Council to fill vacancy in the office of Mayor by majority vote; upon failure to do so, the Charter requires a special election.) These cases would appear to favor an interpretation of City Charter §13-2E that the City Council's appointment is not subject to veto.

While Plaintiffs argument has centered on a past practice of appointment by resolution, defendants claim there is also a past practice that appointment resolutions are not vetoed. In either case, unlike public sector labor law regarding terms and conditions of employment that develop because of a past practice, the same does not occur where the power of appointment is contained in the provisions of a City Charter or state statute.

At argument Plaintiffs' counsel focused on potential improprieties involving internal legislative procedure (i.e. Roberts Rules), as opposed to statutory compliance. In such matters, the court must tread more lightly, particularly where, as here, the litigants seek invalidation of a legislative act. The Court of Appeals has indicated its reluctance to involve itself in purely internal legislative matters requiring review of the parliamentary maneuvers that preceded passage of the certain legislation. *Bd. of Education v. City of New York,* 41 N.Y.2d 535 at 541, (1977). Absent constitutional consideration or statutory interpretation, deliberative bodies are to be the final arbiters of their own internal procedure. *Matter of Gottlieb v. Duryea,* 38 A.D.2d 634 (3rd Dept. 1971); *aff'd without opn* 30 N.Y.2d 807, (1972); *cert. den.* 409 U.S. 1008, 93 S.Ct. 439, 34 L.Ed.2d 300. Where

7

a legislature has determined that it has complied with its own internal rules in enacting a bill, the court should not overturn that determination and invalidate the legislation.

On the other hand, to prevail Plaintiffs would have to prove that the Council's appointment must be made only by a written resolution in a form approved by the Corporation Counsel, that such appointment resolution is subject to veto by the Mayor and that the Mayor properly exercised his veto power. The alleged requirement of each of these steps is disputed by defendants.

It is not this Court's function to determine, at this stage, which party will be ultimately successful in this action but whether the moving party has demonstrated a likelihood of success in order to  supports its application for injunctive relief. This Court does not find that likelihood based upon the facts and legal arguments presented thus far.

## II.     _Irreparable injury_

If the TRO is not extended or a preliminary injunction not granted, the result would be that Justin Chaires would be seated as a member of the Schenectady City Council and would act as such. There is no allegation that Mr. Chaires is not qualified by law or otherwise to hold the office, nor is it alleged that he is not a suitable person as required by the Charter. Plaintiffs raised the issue of the potential invalidity of the actions of the City Council were he to participate and later found to have been improperly appointed. However, the question of the binding nature of the acts performed by _de facto_ public officials has long been settled in this State. _Schick v. Impellitteri_, 122 N.Y.S.2d 729 (Sup.Ct.N.Y.Co.1953)  _order aff'd_. 282 AD. 663 (1st Dept 1953). New York's _de facto_ officer doctrine provides that one who carries out the functions of a public office under color of authority are generally valid as to third parties and the public, and hence immune from collateral attack, notwithstanding irregularities in the manner of their appointment. _Malone v. McHugh_, 797 F. Supp. 154 (E.D. N.Y. 1991), _judgment aff'd_, 968 F.2d 1480 (2d Cir. 1992); _County of Ontario v. Western Finger Lakes Solid Waste Management_

8

[* 8]

*Authority*, 167 A.D.2d 848, 561 N.Y.S.2d 954 (4th Dep't 1990); *Eadie v. Town Bd. of Town of North Greenbush*, 47 A.D.3d 1021 (3d Dep't 2008).

In their reply memorandum, Plaintiffs raise the issue of the potential for irreparable damage to the City by the loss of public trust in its government that could result. Plaintiffs cite a series of cases, all involving the federal government's efforts to require local governments' compliance with federal immigration policy to qualify for certain federal government program assistance. The exception is the first case cited, Council of the City of N.Y. v. Adams. 87 Misc.3d 995 (Sup. Ct, NY Cty 2025), which is a trial court decision. There, the issue of public trust arose when it was claimed that Mayor Adams had used the power of his office for his personal benefit by issuing an Executive Order directing cooperation with federal authorities on immigration enforcement in exchange for the dismissal of a federal indictment against him. The Court in *Adams*, at page 99, further justified injunctive relief by stating, "Where human safety is at issue, or the loss of life, or a mistaken or unlawful deportation may render ultimate relief inadequate, the proof required for injunctive relief is further reduced." The Court in Adams concluded,

> New York City, through legislation and decades of policy, has established a reputation as a "Sanctuary City." This reputation, and the goodwill built from decades of policy decisions, which have provided New Yorkers with numerous intangible cultural and economic benefits, risks being irrevocably tarnished. The harm to New York City's reputation as a Sanctuary City, and the goodwill with numerous communities that flows from that reputation, is best preserved through a preliminary injunction prohibiting defendants-respondents from acting on Executive Order No. 50.

This case involves no such ethical or potential criminal issues, nor does involve issues of human safety or deportation; therefore, the burden on Plaintiffs to meet the three pronged test is not reduced. Here, the issue concerns resolving a dispute over the interpretation and harmonizing of sections of the City Charter regarding the appointment to fill a vacancy process. The rationale of the Court in *Adams* is not lost on this Court. That court was concerned with the goodwill with numerous communities that flows from New York City's reputation as a "Sanctuary City". Here, where all the Councilmembers supporting the appointment and the appointee are people of color and all the Councilmembers opposed to the appointment and the individual Plaintiff are not, could Plaintiffs' application for

9

injunctive relief be seen by numerous communities to tarnish this City's image as one open to diversity, equity and inclusion?

Thirdly, balancing the equities cannot be said to favor Plaintiffs. Plaintiffs claim they seek to uphold the lawfulness of the process or to prevent legitimizing an "irregular" process, On the other hand, Defendants argue the disruption to conduct of the affairs of the City Council (e.g. the appointment of a City Clerk and of a Council President) and of the City's business – the Council's inability to conduct any business is substantial and has a greater likelihood of substantial impact on other parties, ordinary citizens of Schenectady.

For the reasons stated above, the Court finds that Plaintiffs have not met their burden to warrant a continuance of the Temporary Restraining Order or for a Preliminary Injunction during the pendency of this action. Therefore, the Temporary Restraining Order is vacated, the application for a Preliminary Injunction is denied and the Court directs that Justin Chaires be immediately installed as a member of the Schenectady City Council with all the rights and privileges of that office.

Considering the above, it is hereby

ORDERED, since the prior special proceeding was withdrawn by Petitioners, the Temporary Restraining Order issued in City of Schenectady v. Schenectady City Council, Index No. 2025-3138 would also be deemed withdrawn, so it be and hereby is vacated; and it is further

ORDERED, that the Temporary Restraining Order in this action City of Schenectady v. Schenectady City Council, Index No. 2026-166, contained in the Order to Show Cause dated January 27, 2026 and as verbally extended on the record in open court on January 30, 2025, be and hereby is vacated; and it is further

ORDERED, that Justin Chaires be immediately seated as a member of the Schenectady City Council with all the rights and privileges of that office; and it is further

ORDERED, that Defendants shall file and serve their Answer in this action by February 13, 2026; and it is further

ORDERED, that the Court will set a date for a preliminary conference to set a scheduling order, after consultation with counsel; and it is further

10

ORDERED, that this Decision constitutes the Order and Decision of this Court.

Dated: February 2, 2026
        at Schenectady, New York

HON. MICHAEL R. CUEVAS
Supreme Court Justice

Papers Considered: NYSCEF Document Nos. 1 -18, 24, 27 - 36

11